THE STATE ex rel. ST. JOSEPH WATER COMPANY, Plaintiff in Error, v. LUCIAN J. EASTIN et al.

In Banc, February 26, 1917.

1. **CONTRACT: Water Supply to Citizens Outside City: Abrogation by Extension of City Limits.** An existing contract fixing a rate for water service and bottomed on a valuable consideration, between a private consumer who lives outside the city limits, and a public utility company operating within the city, is not abrogated and the parties are not bound by the city's water rates *ipso facto* when the consumer is taken into such city by the extension of its limits. [Overruling State ex rel. Waterworks Co. v. Geiger, 246 Mo. 74.]

2. ———: **Between City and Water Company: Rates Subject to Alteration by City.** Under the statute declaring that "when water shall be taken by private individuals from any waterworks not owned by the city, the mayor and common council shall have the right, by

270 Mo.—13

ordinance, from time to time, to fix the rates to be charged therefor," a public water company is to be held to have contracted with the city with full imputed knowledge of and subject in all ways to all powers and restraints connoted by said statute, and is bound thereby just as fully as if it had been written at large in its franchise contract with the city, and no reduction of rates by ordinance would amount to a violation of the obligation of a special contract between the company and a consumer who stands in exact equality with other consumers. But an independent contract of a water company (which has a franchise contract with the city to furnish water to its inhabitants) to furnish water at higher rates to a consumer outside the city limits, running for a limited and reasonable term, based upon a valuable consideration not paid by city consumers, in which the consumer does not reserve to himself any right of regulation and is not authorized by any statute to regulate rates, is not abrogated or impaired by the extension of the city limits so as to include said consumer, and he does not satisfy the obligation of said independent contract by paying the rates imposed by the franchise contract upon consumers of like amounts of water residing within the city prior to such extension.

*Held,* by WOODSON, J., dissenting, that the consumer in this case (State Hospital No. 2) was not a private citizen, but a public corporation, incorporated for governmental purposes, and both it and the water company contracted with each other knowing the public character of the other and their mutual rights and obligations, and, independent of the contract, it became the legal duty of the water company, after the extension of the city limits, to furnish the hospital water in the same manner and at the same rates it furnished it to others within the extended territory.

3. ———: **Extension of City Limits: Ordinances Applicable to Annexed Territory.** The rule that in all ordinary matters and things the ordinances of an annexing city are at once and automatically extended over the annexed territory does not affect existing private contracts which were not subject to regulation by ordinance at the time they were made.

4. **ORDINANCE: Void Only in Its Application.** An ordinance or statute may be void only in its application. A rate-fixing ordinance may be valid as to all consumers except to those to whom if applied it would impair or abrogate a valid existing private contract.

5. **LAW OF CASE: Different Suit.** Whether or not it be true that the law as declared by the court on one appeal continues to be law of that case upon a subsequent appeal, the rule has no application to a new and separate action.

6. ———: ———: **Mandamus: Demurrer Sustained.** If it no where appears in the alternative writ that a suit by mandamus has previously been brought, and the facts of a former suit are not set forth

therein, an appeal from the ruling of the trial court sustaining a demurrer to the alternative writ is not a second appeal, and hence it cannot be held that the rulings on appeal in a former mandamus case have become the law of this second suit.

7. **APPEAL: Facts of Former Suit: Judicial Notice.**   The Supreme Court takes notice of a former appeal and the record thereof, but does not notice the facts and records in one action when called upon to rule another and separate action.

Error to Buchanan Circuit Court.—*Hon. Thomas B. Allen,* Judge.

REVERSED AND REMANDED (*with directions*).

*John E. Dolman* and *Vinton Pike* for plaintiff in error.

(1)   The ordinance extending the city limits, if given the effect declared by the judgment below, is such an exercise of legislative power delegated by the General Assembly, as may properly be considered a law within the meaning of the provision of the Constitution forbidding the impairment of contracts. Fed. Stat. Ann., vol. 8, p. 863, art. 1, sec. 10, par. b.   (2).   The effect of the passage of the ordinance passed and approved by the city of St. Joseph, July 6, 1909, as construed by the judgment in this case is to impair the obligation of the contract of 1900 between the city of St. Joseph and plaintiff in error.   Under this contract the water company was under no obligation to extend its mains, except where the city by ordinance directed it to do so, and when so directed the city was obligated to rent one hydrant for each five hundred feet of such extension at an annual rental of forty dollars during the term of the contract; and also under this contract the Water Company was under no obligation to furnish water at the same rates to any but private consumers, the State Hospital being a public institution, and therefore a public consumer not supported by municipal taxes as provided in the contract did not come within the terms of the contract specifying a six cent rate for private consumers. The effect given by the judgment to the ordinance of

July 6, 1909, extending the limits of the city, is to require the water company to furnish water to this public institution through a pipe line constructed partly over private property, solely by virtue of a private contract entered into in 1905 with said hospital authorities, and not by virtue of any ordinance of the city, at the same rate it is by its contract with said city required to furnish private consumers, and without the payment to it of any hydrant rental, as is required to be paid under said city contract, which rental would in this instance amount to over four hundred dollars per annum, the pipe line in question being about a mile in length. The effect thus given to . the ordinance impairs the obligation of said contract between the city and the water company of date March 7, 1900, and deprives plaintiff in error of its rights . under said existing contract to the extent stated. Walla Walla v. Water Co., 172 U. S. 1; Railroad v. Texas, 177 U. S. 66; Railroad v. Alsbrook, 146 U. S. 279; Bacon v. Texas, 163 U. S. 207; Water Co. v. Easton, 121 U. S. 38; Water Co v. Sugar Co., 125 U. S. 18; Railroad v. Tennessee, 153 U. S. 486; Light & Power Co. v. Portland, 201 Fed. 119. (3) The effect of the passage of the extension ordinance of 1909, referred to, as construed by the court below, creates a new right, viz., the right of a public institution to receive water at the same rate as a private consumer, and imposes a new duty, viz., the furnishing of water through a private pipe line constructed under a private contract, prior to the passage of the extension ordinance, without the payment of any hydrant rental, the creation of which new right and the imposition of which new duty are substantially antagonistic to the obligations of the contract of 1900 between the city and the water company. Light Co. v. St. Paul, 181 U. S. 142; Trust Co. v. Columbus, 203 U. S. 311; Railroad v. Duluth, 208 U. S. 583.

*John T. Barker,* Attorney-General, for defendants in error.

This cause has been once decided by this court. State ex rel. v. Geiger, 246 Mo. 74. In that action plain-

tiff in error in this suit sued out of this court an alternative writ of mandamus against the then board of managers of State. Hospital No. 2 to compel payment of $2186.33 alleged to be due at that time under the same contract and under conditions exactly similar to those alleged in the petition in the present case. In fact the $2186.33 then sued for constitutes a part of the $16,-279.84 sued for in this action—the excess having accrued according to the contention of plaintiff in error since that suit was brought. The issues in the two cases were identical. When the case was in this court before, the decision was based upon the ground that ''the contract of 1905 between relator and the board of managers was abrogated by the annexation to the city of the territory upon which the hospital was situated, and the rate as fixed by the ordinance must determine the price to be paid for water thereafter used by the hospital.'' It was further ruled that there was nothing in the contract that prevented the application of the rate fixed by the ordinance. It will thus be seen that the precise question previously decided upon the demurrer to respondent's return, is raised for decision in this case by respondent's motion to quash the alternative writ. The decision previously rendered is ''the law of the case'' and. will be held to preclude a subsequent examination of the same issues between the said parties. ''Where a court has once declared the law in a case, such declaration continues to be the law of that case even on a subsequent appeal.'' Railroad v. Baker, 4 Ind. App. 66; County Comrs. v. Pritchett, 85 Ind. 68; Richmond St. Ry. Co. v. Reed, 83 Ind. 9; Howe v. Fleming, 123 Ind. 262. ''The law of the case consists, not in the reasoning of the court or in the illustrations given, but in the propositions of law actually decided and applicable to the facts in judgment.'' Heidt v. Minor, 113 Cal. 385. ''A rule once made in a case by an appellate court, while it may be overruled in other cases, in binding both upon the inferior court and upon the appellate court itself. In a subsequent proceeding neither the lower court nor the court making the rule can depart from such ruling. A

ruling so made is said to be the law of the case." Hastings v. Foxworthy, 45 Neb. 676; Sewing Machine Co. v. Leslie, 118 Fed. 557; Teakle v. Railroad, 36 Utah, 29; Malones Committee v. Lebus, 96 S. W. (Ky.) 519; Westerfield v. Insurance Co., 157 Cal. 339.

FARIS, J.—This is a proceeding by mandamus which comes to us on the writ of error of relator who was cast below, to compel defendants, who are defendants in error here, to audit and pay a certain account alleged to be due plaintiff in error for water delivered to State Hospital No. 2, of which defendants in error compose the board of managers.

The facts are few and simple. Those upon which the case turns, run thus: Relator, St. Joseph Water Company, is a public service corporation, organized under the laws of the State of Missouri. In the year 1900 an ordinance was passed, ratified by an election and accepted by said St. Joseph Water Company (hereinafter for brevity called relator), whereby the latter agreed to furnish water for a term of twenty years to the city of St. Joseph and to those of the inhabitants thereof who use water in specified large quantities, at the rate of six cents per thousand gallons. (Certain more definite details of this franchise contract will be hereafter set forth). In the year 1905 relator entered into a contract with said hospital, of which, as stated, respondents composed the board of managers, wherein it was agreed that connections should be made with the mains of the hospital by a water main of relator and water furnished to the hospital for a term expiring December 31, 1915, at the price of ten cents per thousand gallons. More certain and definite details of this contract, which was by relator in all things performed, will be hereafter specifically set out. At the time of the making of the contract between relator and the hospital, the grounds and buildings of the latter were situated outside of and about one mile from the city limits of the city of St. Joseph. In 1909, four years after the making of the contract by relator with the said hospital to furnish the

latter water, the city of St. Joseph, by an ordinance duly passed, extended its city limits so as to take in and include the whole of the territory occupied by the hospital. Whereupon, defendants in error (hereinafter called defendants for brevity) refused longer to abide by their contract to pay ten cents per thousand gallons for water, but insisted that the extension of the city limits so as to include the grounds and buildings of the hospital at once put in force the rate of six cents per thousand gallons, which prevailed as to large users in the hospital's class, pursuant to the franchise contract, in other parts of the city of St. Joseph. Thereafter, and from July, 1910, till December 31, 1915, when said private contract expired by its own limitations, defendant refused to pay the relator more than the sum of six cents per thousand gallons for water, and relator, with properly pleaded protest and duress, accepted said sum, but after the expiration of the full term of ten years, brought this action of mandamus to compel defendants to order the payment of the sum of $16,279.84, being the alleged balance due, at ten cents per thousand gallons for water furnished after deducting the amount paid as aforesaid at the rate of six cents per thousand gallons.

Upon relator's filing in the circuit court of Buchanan County its petition aptly setting forth all of the above facts and more, an alternative writ of mandamus was issued, which likewise set forth all of said facts aptly. To this alternative writ defendants demurred, which demurrer, being by the court and the parties treated as a motion to quash the writ, was sustained, and plaintiff sued out its writ of error, and the case is now here for ruling upon the sole question of the correctness of the action of the court *nisi* in sustaining said demurrer.

Under the terms of the franchise contract made between relator and the city of St. Joseph, which is a city of the second class, it was agreed that relator shall maintain five hundred fire hydrants in said city, for which the city agreed to pay an annual rental of $40 each; that relator shall maintain twenty-six public drinking fountains, for which the city shall annually pay the re-

lator the sum of $50 each. It is further in said contract agreed that relator shall from time to time, as it may be by ordinance directed, extend its mains over the streets, highways and public lands of said city, and for every five hundred feet of mains extensions there shall be erected by relator and paid for by said city a fire hydrant, at the annual rental aforesaid. It is further agreed therein that water shall be furnished to all private consumers in said city and no partiality or inequality in rates shall be permitted.

The private contract above referred to and entered into between relator and the predecessors of defendants as members of the board of managers of said hospital, provided in pertinent substance that a six-inch main should be laid from the then end of relator's water mains on Brady Street, for a certain described distance, and that thereafter an eight- or ten-inch main should be laid to connect with the six-inch main on the grounds of the hospital; that the hospital should do all excavating and refilling of the trenches necessitated, while relator was to furnish all material and labor in laying said main; that upon the grounds of said hospital a six-inch meter should be furnished and set, which meter should have by-passes and gate-valves for the purpose of permitting the passing by of water free without measuring same through said meter, and inferably for fire protection purposes in said hospital. Relator also agreed to extend its mains into the hospital grounds and to erect thereon between five and ten fire hydrants, according as the hospital necessities might eventually require, and to lay in said hospital grounds, if necessary, three thousand feet of pipe.

It is averred in the petition and in the alternative writ that all of these things were done; that relator expended in the extension of its mains the distance of a mile, which was necessary, and in constructing its branch line and mains and in putting in the hydrants on the grounds of said hospital, the sum of more than $12,000; that in said extension of relator's mains relator was compelled to and did build a branch main, which it is

stated ran for its entire length of a mile over private property outside of the city limits of said city of St. Joseph, and along which branch main for the distance aforesaid no hydrants were placed and along which none could be placed from which it would ever receive any revenue whatever from the city.

It is further alleged that in the ordinance which was approved on the 6th day of July, 1909, by which the limits of the said city were extended so as to include the grounds and buildings of said hospital, no provision was made for regulating the rates or the supply of water to said hospital; nor has any such provision so regulating such water supply, or the rates to be charged said hospital therefor, ever been made by any ordinance, or in any other manner, nor has any way been provided for compensation to relator for any loss or impairment of its, contract obligation aforesaid, with said hospital.

It is contended by relator that the effect of the ordinance of the city of St. Joseph which extended the city limits so as to include the grounds and buildings of said hospital with which relator had a ten-year private contract, in the light of the construction placed on said ordinance, when same is read in connection with the provisions of the ordinance granting relator a franchise, is to impair and abrogate said contract between relator and said hospital, which said abrogation is contrary to and in violation of both article 5 and section 1 of article 14 of the Amendments to the Constitution of the United States. Wherefore, relator prayed for the issuance of a peremptory writ of mandamus, and an alternative writ having issued as stated, defendants demurred thereto, which demurrer being treated by the court *nisi* and the parties hereto as a motion to quash the alternative writ, was sustained, and the case is before us on appeal to contest the correctness of the ruling of the lower court in said behalf. The question agreed to be in issue as well as such other facts as may serve to illuminate that question, will be set forth in requisite detail in our opinion.

I. The concrete single point up for ruling is this: Is an existing contract fixing a rate for water service and bottomed on a valuable consideration, between a private consumer, who lives outside the city limits, and a

Abrogation
of Contract:
Water Rates.

public utility company operating in a neighboring city, abrogated and are the parties bound by the city's water rates *ipso facto* when the consumer is taken into such city by the extension of the city limits thereof?

The question at issue is plain and concise, and upon the facts conceded can be fully ruled. That it is a nice and most difficult one is in no way attributable to the form in which it is presented. It would have been as nice a one if it had come up in an action for breach of contract, or *indebitatus assumpsit,* so we will not of our volition debate a question not mooted, but take the case as we find it; since the applicability of the remedy chosen, if the law upon the facts otherwise allow, is not questioned.

Approaching this question with full knowledge that the case of State ex rel. St. Joseph Waterworks Co. v. Geiger, 246 Mo. 74, held otherwise, we are yet constrained to disagree from the views taken by this Court in Banc in that case, and to hold that such a contract is not abrogated. The holding in the Geiger case was largely bottomed upon a quotation from the excellent work on corporations of the late Judge THOMPSON, wherein but a part of what the learned writer there said is quoted. Italicising for emphasis and distinction what is omitted from this writer, we quote in full:

"Until the Legislature or other body having the right to prescribe the rates to be charged by corporations, whose business is affected with a public interest, has exercised this power, the rates are the subject of contract between the corporation and its patrons. And this is the case where the Constitution makes it the duty of the Legislature to prescribe reasonable maximum rates, but the Legislature has 'failed to do so. Since, however, the franchise is taken subject to regulation by the State in the exercise of its police power, the conclu-

sion seems a sound one that the corporation cannot enter into a binding contract with a patron extending beyond the time when the Legislature or municipal council duly empowered thereto may fix the rates. It is plain that a public-service corporation able to forestall legislative action by contract for a limited time could do so for so long a time as to render futile any legislative control. *It has been held, however, in a case where a water company's franchise fixed the rates for service, and an ordinance conferred on the company the privilege of laying mains in additions outside the city limits, that independent contracts to furnish water to persons in these outside districts at higher rates were neither abrogated nor affected by the subsequent incorporation of these districts into the city proper.''* [3 Thompson on Corp. (2 Ed.), sec. 2953.]

We find no manner of fault with this excerpt, but merely content ourselves by saying that the portion of it quoted in the Geiger case does not apply in our opinion to the facts in the instant case, and by undertaking to show with the requisite quantum of deference, that it did not apply in that case. With the additional portion italicised by us and now for the first time in this behalf quoted, we of course find no fault, for it states, we submit, the applicable rule concisely, clearly, plainly.

We concede as a premise, that a city of the second class, such as St. Joseph is, may change and regulate, raise and lower water rates. In fact, when relator was granted, pursuant to a vote, the franchise contract evidenced by the ordinance of the year 1900, the below statute governing cities of the second class was and long had been in force therein, to-wit:

''The common council shall have the exclusive right to erect, maintain and operate waterworks within the limits of the city, and to regulate the same; to prescribe the rates at which water shall be charged to the inhabitants of such city when taken from said works, and acquire, by purchase, donation or condemnation, suitable grounds within or without the city, upon which to erect waterworks, and the right of way to and from said

works, also the right of way for laying water pipes within the limits of said city, all of which shall be done in such manner as prescribed by ordinance: *Provided,* that the mayor and council may, in their discretion, grant the right to any person or persons to erect waterworks and lay down pipes for the use of said city and its inhabitants upon such terms as the common council may by ordinance prescribe: *Provided,* that such right shall not extend for a longer period than twenty years, and shall not be granted nor shall be renewed unless by the consent of a majority of the qualified voters of said city, to be ascertained at an election held for such purpose: *Provided,* that when water shall be taken by individuals from any waterworks not owned by such city, the mayor and common council shall have the right, by ordinance, from time to time, to fix the rates to be charged therefor.'' [Sec. 9081, R. S. 1909.]

It is elemental that relator contracted with the city of St. Joseph with full imputed knowledge of, and subject in all ways to all of the powers and restraints connoted by the above section, and that it is bound thereby just as fully as if these provisions were written at large in its franchise contract with the city of St. Joseph. Having contracted in the light of the city's power of regulation, no reduction of rates would amount to a violation of the obligation of a contract, so far as this question goes as between the relator and the city, or as between relator and any private consumer residing in such city, and standing as regards relator, in exact equality with other consumers in the city. Illustrating this rule and sharply illuminating the extent of our concession, as to its far-reaching character, we note that in a case of seeming hardship it has even been applied in a criminal prosecution by the highest court in the land. [Armour Packing Co. v. United States, 209 U. S. 56.] In that case plaintiff in error, the Packing Company, being indicted for accepting a rebate from a common carrier, pleaded in defense the binding obligation of a contract for a rate less than the existing published tariff, which contract was made prior to the establishment, under au-

thority of the Interstate Commerce Act, of such tariff
rate. But the conviction was sustained, notwithstand-
ing, the Supreme Court holding (1. c. 82) that: ''If the
shipper sees fit to make a contract covering a definite pe-
riod for a rate in force at the time, he must be taken
to have done so subject to the possible change of the
published rate in the manner fixed by statute, to which
he must conform or suffer the penalty fixed by law.''

Likewise, it was held in the case of Des Moines v.
Des Moines Waterworks Co., 95 Iowa, 348, where a pub-
lic utility company had a contract for water service *with
both a city and an, adjoining town,* that upon the exten-
sion of the city limits over the town, the rates of the city
applied to the inhabitants of the town and the contract
of the utility company with the *absorbed* town for a dif-
ferent rate was abrogated. The books are fairly full of
cases like the above (People ex rel. Chicago v. Chicago
Tel. Co., 220 Ill. 238; Peterson v. Tacoma Ry. & Power
Co., 60 Wash. 406; Detroit v. Detroit United Ry. Co.,
173 Mich. 314), wherein we submit, however, a palpable
difference is manifest distinguishing the above class of
cases from the instant one. One or two cases have been
found wherein a similar rule was made upon a state of
facts so different from the facts held in judgment in the
Des Moines case, as possibly to call for a different rule,
or a different reason for a similar rule. [Indiana Ry.
Co. v. Hoffman, 161 Ind. 593, and cases following it and
cited in L. R. A. 1916—A, 1072.]

But be this as may be, we think it manifest that
none of these cases rule the instant one upon the facts
up for judgment. We have set them out at so great
length merely to emphasize and make plain the differ-
ences existing between them and the case at bar. We
are not called on to criticise any of these cases; they
seem to have been justly ruled, and we may content our-
selves by distinguishing them. We can even find a fairly
conclusive and satisfying reason for the difference in the
rules applied. For the above were cases wherein the
public utility had *franchise contracts* with both the an-
nexed and annexing municipality. There existed there-

fore the power to regulate public service rates as to each of such existing franchise contracts, in both the annexed and annexing municipality. So, the franchise contracts in each municipality having been made with imputed reference to the power in each municipality to ,regulate rates, it follows that unless the rate in the *annexing* municipality was confiscatory (and being an agreed rate this contingency would doubtless be obviated by estoppel), no very serious objection could arise or be urged against applying the rate of the *annexing* city, rather than that of the *annexed* municipality. But in none of the above cases was there a special contract between the *private consumer and the public utility company,* entered into for a valuable consideration, as in the instant case. There was or seems to have been, in all of them a franchise contract, or ordinance with either the county in which the annexed territory lay before annexation, or with the town itself which was annexed; or, else, the utility company affected was a railroad organized as a common carrier by the State, which granted it a charter, and which charter carried as an inherent adjunct the power in the chartering authority to regulate the rates charged when and wherever such carrier might operate. [Indiana Ry. Co. v. Hoffman, 161 Ind. 593, and cases following it, supra.] In all such cases the franchise contracts which were so abrogated were made with the governing authorities of the annexed or absorbed municipality, and were concededly for the benefit of all of the inhabitants of such town, but nevertheless by statute or constitution these contracts were made subject to the power of rate-regulation by the authorities which granted them to the public service company affected. [Armour Packing Co. v. United States, supra.] *The situation presented by them does not turn as in the instant case, upon a private contract running for a limited and reasonable term, made with a private consumer for a valuable consideration, which consumer, by the terms of his contract, had not reserved to himself within the contract period any right of regulation, and who had behind him*

*no statute retaining for him any power of rate regulation.*

The holding announced in the case of Rogers Park Water Co. v. Fergus, 178 Ill. 571, laying down the rule governing applicatory rates in territory theretofore within a town which has been annexed to a city having a different rate, seems to be bottomed on correct principles; to nicely state the rule, and to put it upon reasoning at once logical and fair, and to be in consonance with other rules which affect and modify the situation. The above case held that the annexation of a town to a city, which city possessed statutory power to regulate rates of public utilities, authorized such city to reduce the rates which were being charged in the absorbed town, pursuant to a contract with the latter having thirty years to run, below the rates specified in such contract. In reaching this ruling the Supreme Court of Illinois said that the town ordinance fixing for thirty years the rate to be charged did not constitute an irrevocable contract, and that it was not a property right, but that by it the inhabitants of the town were only bound (*in any event, whether annexed or not, it might well have added*) to pay the rate fixed by the thirty-years ordinance, so long only as such rates, for that they had become unreasonable, might not be reduced by another ordinance. This case was affirmed by the Supreme Court of the United States. [Rogers Park Water Co. v. Fergus, 180 U. S. 624; Freeport Water Co. v. Freeport, 180 U. S. 587.]

But it is clear to us that the instant case does not, upon its plain facts, fall within the rule so clearly laid down above, nor do the principles announced rule it. On the contrary this case falls within the principle enunciated in the case of Denver v. Denver Union Water Co., 41 Colo. 77, wherein it was expressly ruled that the annexation to the city of territory outside the city limits did not have the effect of abrogating individual contracts made by the water company before annexation, with private consumers residing in such annexed territory. This view is likewise in full accord with the rule deduced by

the learned author of Thompson on Corporations, as set out above herein and emphasized by italics, in the excerpt which we quote from his most excellent work.

There is manifestly not much force in the reasoning—as a basis for the rule of abrogation—that since, in all ordinary matters and things, the ordinances of an annexing town or city are at once and automatically extended to and over the annexed territory, it follows that a rate-ordinance inevitably and without exceptions doth the like. Such a rule, we concede (St. Louis Gaslight Co. v. St. Louis, 46 Mo. 121; 28 Cyc. 215), exists and makes the annexing city's ordinances to apply automatically and immediately to the annexed territory, save and except in such matters wherein application of the rule would affect existing private contracts by impairing or abrogating them. [Cloverdale Homes v. Cloverdale, 62 So. 712.] An ordinance which would by the construction put on it have the effect to annul an existing private contract (which contract was not when made subject to regulation by the rate-making power) would be void because violative of the provision of the organic law forbidding the passage of a law violating the obligation of contracts. The ordinance itself would not of course be wholly void, but touching its application to those inimically affected by such a construction it would be void and non-operative in the particular aspect by which it made nugatory an existing and otherwise valid contract.

The limits-extension ordinances here is the usual one. It is intrinsically proper and seemingly beneficent. It becomes bad as against the organic law only in the event that the construction contended for by defendants is upheld. We have refused to uphold the construction which defendants urge. If we had done so, it is contended that such a construction would have involved a Federal question. As we have felt constrained upon the law and the facts to hold that the contract is valid and binding, the extension ordinance notwithstanding, and that the contract's obligations are not annulled by the provisions of the ordinance, that is merely tantamount

to saying in the language of the Supreme Court of the United States that the contract is "absolutely unaffected by the ordinance, which it is asserted brought about the impairment." [St. Paul Gas Light Co. v. St. Paul, 181 U. S. 1. c. 149; Mercantile Trust Co. v. Columbus, 203 U. S. 311.]

We are not called on to consider whether a private contract for supplying water for ten years to a private consumer residing a mile from the company's mains, wherein connection was made at an expense to the water company of more than twelve thousand dollars, at ten cents per thousand gallons, was or was not so unreasonable as to have warranted a reduction upon proper and timely application therefor. That is not this case. We are only holding here upon the case made, that the contract was upon its face valid and binding (State ex rel. v. Geiger, 246 Mo. 1. c. 100), and that it was not abrogated by the ordinance extending the city limits of the city of St. Joseph so as to include the State Hospital for the Insane, and that upon the admitted allegations of the alternative writ the demurrer should have been overruled. This view results in overruling the case of State ex rel. v. Geiger, 246 Mo. 74, so far as the same may conflict with our views here.

II. It is contended by the learned Attorney-General, as counsel for defendants, that we are bound by the decision in the Geiger case, supra; that right

Law of Case.

or wrong that case should rule this; that though we are at liberty to depart from that ruling in a new case or another similar case, we cannot do so here, because "where a court has once declared the law in a case, such declaration continues to be the law of that case even on a subsequent appeal."

We find no fault with the rule, and shall not take time to either re-examine it or quarrel with it. We may concede it for the purposes of this case, and stop to inquire neither as to its correctness nor as to the universality of its application unmodified. But the difficulty

270 Mo.—14

we find in applying the rule to the facts here is that the rule fails to fit the facts. This case is here upon a sustained demurrer to the alternative writ. Such facts *and no more* as are set forth in such writ, are for the purposes of this appeal, the status of the pleadings considered, conclusively presumed to be the facts of the case. It nowhere appears in the alternative writ that this action has ever been here before. Therefore, this is a new action and not a second appeal; the parties are new and the subject-matter of the action is new, so far as we are now given to know. If, as counsel for defendants urges, the sum of $2186.33, now included in the sum demanded, was embraced in a former action which was bottomed on an identical question of law, and between parties individually distinct but officially holding the same positions as do the parties herein, that matter can no doubt be adjusted when the answer comes in, as can other kindred matters. This is not a second appeal of the former case, but another case. The facts in the former case, we repeat, are not set forth in the writ here attacked, neither does it appear in such writ that there ever was such a former suit. We take notice of a former appeal and of the record thereof (Keaton v. Jorndt, 259 Mo. 179); but we do not notice the facts and records in one action when called on to rule another and separate one. [Spurlock v. Railroad, 76 Mo. 67; Banks v. Burnam, 61 Mo. 76; 16 Cyc. 918.] So as this case as now presented comes to us as an entirely new case, we are not bound by the law thereof as announced in the case of State ex rel. v. Geiger, supra, as "the law of the case," within the purview of the rule urged on us, and so as to render that rule binding on us whether it be in our view rightly ruled or not. But these matters should not prove difficult of solution or adjustment upon the trial of the case upon its merits.

Let it be reversed and remanded with directions to the learned trial court to overrule the demurrer to the alternative writ and to proceed with the case as counsel therein may be advised they ought to proceed, consistent-

ly however, with the views expressed herein. All concur except *Woodson, J.*, who dissents in separate opinion.

WOODSON, J. (dissenting)—I dissent from the majority opinion for the following reasons:

The State Hospital No. 2, located at St. Joseph, is a public corporation of the purest character—without an element or ingredient partaking of a private character.

Under these facts, the Water Company must be considered in the light of contracting with a public institution, and one of the State—incorporated, if not for governmental, for administrative purposes—in my opinion, the former. [State ex rel. v. Geiger, 246 Mo. 74, l. c. 97.]

State Hospital No. 2, being thus a public corporation, contracted as such with the company for water, both knowing the public character of each other, and their mutual rights, duties and obligations, as then existing or as might thereafter be created by law. So independent of the contract, after the extension of the city limits, it became the legal duty of the company to furnsh the hospital with water in the same manner and for the same rates that it furnished it to other persons within the extension. That duty was as obligatory as if a provision to that effect had been inserted into the contract itself. Such is the holding, as I understand it, of the authorities cited in the majority opinion.

Under that view of the case, the water contract, by agreement of parties, terminated and ceased to be binding and operative upon the extension of the city limits, embracing the hospital; otherwise, we must conclude and hold that at the time the contract was entered into, it was the intention of the parties that the State through said board of managers impliedly waived this valuable right to demand and receive water from the company just as other consumers had the right to do. In other words, counsel for the company contend, in effect, that after the extension of the city limits, it was under a two-fold duty, separate and independent of each other, to furnish water to the hospital, namely, a legal duty

and a contractual duty; yet had the hospital insisted, at that time, or even now, should it insist upon the company performing its legal duty by laying mains, pipes, etc., as provided for by its charter, and to furnish water through same to it, the, latter would be the first one to protest and insist that such a demand was unreasonable, unjust and oppressive, notwithstanding the fact the company is still furnishing water through the mains laid under the contract, which has long since expired, and still located upon what it designates as private property, but in fact public property—the grounds of the institution.

In my opinion such a demand of the hospital would be unreasonable, unjust and oppressive, for the reason that it was clearly the intention of the parties that, when the city limits were extended so as to include the Hospital, the company should continue to furnish water through those mains, not in the performance of its contractual duties to the hospital, but in the performance of its legal duty. Otherwise, the board of managers could have the mains removed from the grounds and compel the company to lay others, under its charter obligations, which was never contemplated by either party, but both understood that as soon as the extension should be made the contract was to cease and the legal duty of the company to furnish water was to begin.

For these reasons I dissent.