CITY OF ST. LOUIS v. PUBLIC SERVICE COMMIS-
SION et al.; UNITED RAILWAYS COMPANY
OF ST. LOUIS, Appellant.

In Banc, December 30, 1918.

1. **PUBLIC SERICE COMMISSION: Street Railway Fares: In Ex-
cess of Rates Fixed by Ordinance.** Notwithstanding the Constitu-
tion says that "no law shall be passed by the General Assembly
granting the right to construct and operate a street ra'lroad with-
in any city, town, village, or on any public highway, without first
acquiring the consent of the local authorities having control of
the street or highway proposed to be occupied by such street
railroad," the Legislature has power, by subsequently enacted leg-
islation, to grant to a State agency, such as the Public Service
Commission, authority to increase the rate of fares agreed upon
to be charged by the company in the franchise ordinance, al-
though those rates were made the condition upon which the
consent of the city was given to the company to construct and
operate its railways upon the streets. The constitutional pro-
vision does not expressly or by necessary implication prohibit the
Legislature from fixing the fares.

2. ———: ———: ———: **Consent Upon Condition.** Independent of
the Constitution and incidentally in furtherance of the public
welfare, the city had authority, prior to the enactment of the
Public Service Act, to grant its consent to a private company to
construct and operate its railways in the streets upon cond'tion
that its fares be a fixed amount, simply because the Constitution
did not prohibit it from doing so. But such a contract did not,

neither does any provision of the Constitution, prohibit the Legislature to enact legislation prescribing or permitting different rates from those mentioned in the contract. The power of the city to impose the condition is wholly different from its power to give or withhold consent to the railway company to enter the city. The latter is a constitutional grant to the city; the former is not. The condition in the contract is subject to the police power, which by the Constitution itself cannot be abridged.

3. ———: **Applicable to St. Louis.** The act of the Legislature creating the Public Service Commission and defining its powers and prescribing its duties is applicable to the City of St. Louis, and gives to said Commission power to prescribe reasonable and lawful rates of fare to be charged by a street railway for carrying passengers, and thereby to displace rates previously prescribed by the city.

Appeal from Cole Circuit Court.—*Hon. J. G. Slate,*
Judge.

REVERSED AND REMANDED. (*with directions.*)

*H. S. Priest, T. E. Francis* for appellant, United Railways Co.; *Morton Jourdan,* of counsel; *A. Z. Patterson* and *J. D. Lindsay,* General Counsel and Assistant General Counsel for appellant, Public Service Commission.

(1) Rate making is the province of the State in the exercise of its police power. The express language of the Constitution, is that this power "shall never be abridged." Art. 12, sec. 5. Even if not expressly reserved, this power, so essential to the public welfare, would be construed as impliedly reserved. It is the governing power for the welfare of the State. The ordinance relied upon by the city, whether it be a contract or regulation, must give way when it conflicts with legislation of the State in the exercise of its police power. When the State acts, the power of the city ceases. State ex rel. v. Public Service Commission, 275 Mo. 201; City of Fulton v. Public Service Commission, 275 Mo. 67; State Public Utilities Commission v. Railroad, 275 Ill. 555, 570; Chicago v. O'Connell, 278 Ill.

591; Atlantic Coast Railway Company v. Commissioners, 104 Atl. 218; Collingswood Sewerage Co. v. Collingswood, 102 Atl. 901; Salt Lake v. Traction Co., 173 Pac. (Utah) 556. (2) Section 20 of Article 12 of the Constitution does not confer upon the City of St. Louis any power to make a contract or enact a law that is not subject to and in harmony with the Constitution and laws of the State. It is a prohibition against the exercise of the power of the General Assembly to grant a franchise "without first acquiring the consent of the local authorities," etc. From this negation of power to the Legislature, except upon condition of consent of the municipality, a proper interpretation will not justify a commission to the municipality of omnipotence to make and maintain any condition its wisdom or folly may suggest. The right of the city to give or withhold its consent to the occupation of its streets by street railways does not give it the power to fix rates. Its power must be sought for in its charter, which must always be subject to the Constitution and laws of the State. Ewing v. Hoblitzelle, 85 Mo. 64, 76; Home Telephone Co. v. Los Angeles, 211 U. S. 265; Milwaukee Electric Ry. & Light Co. v. Railroad Commission, 238 U. S. 174; Manitowoc v. Manitowoc Co., 145 Wis. 13; State v. Telephone Co., 189 Mo. 99; State ex rel. v. Public Service Commission, 270 Mo. 444; State ex rel. v. Railroad, 140 Mo. 550. (3) The respondent relies upon the case of Matter of Quinby v. Public Service Commission, 223 N. Y. 244. The judgment there rested upon a narrow interpretation of the act of that State establishing the Commission, while a contrary interpretation of our act (mainly borrowed from that of New York) was made by this court long antecedent to the above decision. If, when a law has been substantially copied by one state from another, it has received judicial construction, that interpretation will also be adopted; but, if the courts of the borrowing sovereign are first called upon to construe the law, and do construe it, their construction must stand, notwithstanding there

may be a subsequent and contrary interpretation by the judiciary of the state from which the law was taken. Pratt v. Miller, 109 Mo. 89; Northcutt v. Edgar, 132 Mo. 278; Stulsman County v. Wallace, 142 U. S. 312; Myers v. McGavock, 58 N. W. (Nebr.) 527; Bank v. Hoffman, 74 Mo. App. 207; Metropolitan R. R. Co. v. Moore, 121 U. S. 572; State v. Chandler, 132 Mo. 161.

*Charles H. Daues,* and *H. A. Hamilton* for respondent, City of St. Louis.

(1) The General Assembly can pass no law granting the right to construct and operate a street railroad in the City of St. Louis, and no street railroad can be constructed and operated in said city, without the consent of the duly constituted local authorities. Const. Mo. art. 12, sec. 20; Union Depot Ry. Co. v. Southern Ry. Co., 105 Mo. 562; State ex inf. v. Lindell Ry. Co., 151 Mo. 162; St. L. & M. R. Ry. Co. v. Kirkwood, 159 Mo. 239; St. Louis v. United Rys. Co., 263 Mo. 387; Carlisle Railway Company's Appeal, 245 Pa. St. 561. (2) In granting the consent required by Section 20, Article 12, Constitution of Missouri, the City of St. Louis may attach such conditions thereto as it deems necessary and proper. A limitation upon the amount of fare to be exacted is a valid condition to granting consent to construct and operate a street railroad, and no legal power can disregard the condition and still uphold the consent. Union Depot Ry. Co. v. The Southern Ry. Co., 105 Mo. 562; St. L. & M. R. Ry. Co. v. Kirkwood, 159 Mo. 239; Kansas City v. Railroad, 187 Mo. 146; St. Louis v. United Rys. Co., 263 Mo. 387; In re Kansas City Railways Co., 3 Mo. P. S. C. 593; In re Southwest Mo. Ry. Co., 4 Mo. P. S. C. 13; People v. Barnard, 110 N. Y. 548; Kittinger v. Buffalo Traction Co., 160 N. Y. 377; Gaedeke v. Staten Island Railroad, 43 App. Div. 515; People ex rel. v. North Tonawanda, 70 Misc. Rep. 91; Allegheny v. Millville Railroad, 159 Pa. St. 411; Plymouth Tp. v.

Chestnut Hill Railroad, 168 Pa. St. 181;  West Chester v. Postal T. C. Co., 227 Pa. St. 384;  Ashworth v. Pittsburg Railroad, 240 Pa. 105;  McKeesport v. McKeesport Railroad, 252 Pa. St. 142;  3 Elliott on Railroads (2 Ed.), sec. 1081;  Detroit v. Detroit Railroad, 184 U. S. 386.  (3) The police power is always subject to the rule that the legislature may not exercise any power that is expressly or impliedly forbidden to it by the Constitution.  12 Corpus Juris, p. 929;  State v. Julow, 129 Mo. 163;  State v. Missouri Pacific Ry. Co., 242 Mo. 339;  Ives v. South Buffalo R. R. Co., 201 N. Y. 271.  (4) The Public Service Commission Act does not vest power in the commission to increase the rate of fare stipulated in the franchise ordinance of a street railway and made a condition upon which the local consent is granted to construct and operate said railway upon the streets and highways.  State ex rel. v. Public Service Commission, 270 Mo. 429;  Quinby v. Public Service Commission, 119 N. E. 433.

WOODSON, J.—At all the times hereinafter mentioned, the United Railways Company of St. Louis was operating its system of street railways in that city under and by authority of Ordinance No. 19,352, approved April 12, 1898.  Said ordinance after authorizing the construction and operation of street railways upon and over certain streets of the city, provided that:

"A fare of five cents shall be charged for passengers of twelve years of age and over, and one-half of said fare for persons under twelve and over five years of age.  Children's tickets shall be sold by conductors on the car at the rate of two tickets for five cents.  Transfers shall be given so as to transport passengers by a continuous trip from one point on the system to any other point on the system."

This ordinance was duly accepted in writing by said Railways Company, and was properly filed in the

office of the Register of said city, as required by said ordinance.

Thereafter, in February of 1918, the United Railways Company filed with the Public Service Commission a petition asking that it be allowed to charge a reasonable compensation for the service it rendered the public in operating its street railways in the City of St. Louis.

The City of St. Louis was allowed to intervene. It filed an "answer and protest" in which it challenged the jurisdiction and power of the Public Service Commission to annul, change or impair any terms made in said ordinance enacted by the Municipal Assembly of the City of St. Louis granting the Railways Company the right to construct and operate its railways in the streets of the city.

The answer interposed as a defense Section 20 of Article 12 of the Constitution of 1875, which reads: "No law shall be passed by the General Assembly granting the right to construct and operate a street railroad within any city, town, village, or on any public highway, without first acquiring the consent of the local authorities having control of the street or highway proposed to be occupied by such street railroad; and the franchise so granted shall not be transferred without similar assent first obtained."

The public Service Commission granted the petition of the Railways Company and authorized it to collect from adult passengers a fare of six cents instead of five cents, as provided for by said ordinance.

The City of St. Louis obtained from the Circuit Court of Cole County a writ of *certiorari*, ordering the Commission to sent up the record in the cause so that it might review the rulings of said Commission in the cause, and upon proper hearing and after due consideration, that court reversed the finding and rulings of the Commission. From that judgment of the Circuit Court, an appeal was duly taken to this court, both by the Commission and the Railways Company.

I.   There are two legal propositions presented by this record for determination.   The first is, has the Public Service Commission the power, under the Constitution and laws of this State, to increase the rate of fares agreed upon to be charged by the Railways Company in the franchise ordinance, which was made a condition upon which the consent of the city was given to the company to construct and operate its railways upon the streets of the city?  Counsel for the appellant insist upon the affirmative of this proposition, while those for the respondent deny the Commission possess that authority.

*Power of Commission.*

The second proposition before referred to will be stated and discussed in another part of this opinion.

Counsel for appellants contend that the judgment of the circuit court is erroneous for the reason that the making of rates to be charged for the transportation of passengers by common carriers is the province of the State in the exercise of its police power; that this power is inherent in the State as a part of its sovereignty, and unabridgable by virtue of Section 5 of Article 12 of the Constitution, and that under this power the franchise ordinance before mentioned, whether it be considered a contract or regulation, must give way when it conflicts wth legislation of the State in the exercise of its power.   That when the State acts in that regard, the power of the city ceases.

It must be conceded, as contended for by counsel for respondent, that the Legislature has no power to grant to a street railway company the authority to construct and operate street railways upon and over the street of any city in this State without the consent of the duly constituted authorities thereof.   Such is the express inhibition of Section 20 of Article 12 of the Constitution of this State for the year 1875; and the rulings of this court have been uniform in upholding that provision of the Constitution.  [State ex inf. v. Lindell Ry. Co., 151 Mo. l. c. 185;  St. Louis and Mera-

mec River Ry. Co. v. City of Kirkwood, 159 Mo. 239, l. c. 249; City of St. Louis v. United Railways, 263 Mo. 387, l. c. 441.]

This court has also uniformly held that the city in giving its consent as provided for by said Section 20 of Article 12 of the Constitution may impose such conditions as it may deem necessary and proper; but whether that power is derived from the constitutional provision, the charter of the city, or derived from the public policy of the State, has not been decided.

The following cases hold that the city may impose such conditions: Union Depot Ry. Co. v. The Southern Ry. Co., 105 Mo. 562, l. c. 573 and 574; St. Louis and Meramec River Ry. Co. v. City of Kirkwood, 159 Mo. 239; City of St. Louis v. United Railways Co., 263 Mo. 387.

To the same general effect are the following authorities: Kansas City v. Kansas City Belt Ry. Co., 187 Mo. 146; In re Kansas City Ry. Co., 3 Mo. P. S. C. 593; In re Southwest Missouri Ry. Co., 4 Mo. P. S. C. 13; People v. Barnard, 110 N. Y. 548; Kittinger v. Buffalo Traction Co., 160 N. Y. 377; Gaedeke v. Staten Island, etc., R. R. Co., 43 App. Div. 514; People ex rel. v. North Tonawanda, 70 Misc. Rep. 91; Allegheny v. Millville, etc., R. R. Co., 159 Pa. St. 411; Plymouth Tp. v. Chestnut Hill, etc. R. R. Co., 168 Pa. St. 181; West Chester Boro. v. Postal T. C. Co., 227 Pa. St. 384; Ashworth v. Pittsburg Ry. Co., 231 Pa. 539; Point Bridge Co. v. Pittsburgh Ry. Co., 240 Pa. 105; McKeesport v. McKeesport, etc. Ry. Co., 252 Pa. St. 142; 3 Elliott on Railroads (2 Ed.), sec. 1081; Detroit v. Detroit, etc., Railroad Co., 184 U. S. 368.

From this premise it is contended by counsel for respondent that since the Legislature could not under the inhibition of said constitutional provisions in the first instance have granted the Railways Company the authority to construct and operate its railways upon and over the streets of the City of St. Louis; and that since the city alone possessed the absolute and exclu-

sive power under the express provisions of said constitutional provision, to grant or withhold its consent to the company to so construct and operate its railways, and that since the city had the authority to impose as a condition upon its said consent that the company should agree that it would not charge greater fares than those stated in the ordinance, it therefore follows that the Legislature cannot, by statute subsequently enacted, authorize that to be done which it could not do in the first place, namely, authorize the Public Service Commission to annul, change or impair the limitations placed upon the fares prescribed by the franchise ordinance. In other words, if I correctly understand counsel, they insist that the Legislature had no constitutional authority by subsequent legislation to change or authorize the change of the list of fares fixed by the franchise ordinance, when it could not in the first place have done so.

It must be conceded that, under the adjudications of this court, the City of St. Louis had the absolute and exclusive authority to grant to or withhold its consent from the Railways Company to construct and operate its railways over the streets of the city. Union Depot Ry. Co. v. Southern Ry. Co., 105 Mo. 562, l. c. 573; St. Louis and Meramec River Ry. Co. v. City of Kirkwood, 159 Mo. 239; Kansas City v. Belt Ry. Co., 187 Mo. 146; City of St. Louis v. United Railways Co., 263 Mo. 387, l. c. 439.

If it were not for this constitutional provision there would be no doubt as to the power of the Legislature in the exercise of its police power to increase or authorize the Commission to increase the rates of fares stipulated for in the franchise ordinance; as I understand it, this is practically conceded by counsel for the respondent. But in the presence of that provision, it is contended that the Legislature is shorn of that power. Their position is thus stated: "The police power is always subject to the rule that the Legislature may not exercise any power that is expressly or impliedly forbidden by the Constitution;" and in support of this

proposition we are cited to the following authorities: 12 Corpus Juris, p. 929; State v. Julow, 129 Mo. 163; State v. Missouri Pacific Ry. Co., 242 Mo. 339; Ives v. South Buffalo Ry. Co., 201 N. Y. 271.

The correctness of the proposition just stated is fully supported by the authorities cited, and counsel for appellants do not question its soundness; but insist that said Section 20 of Article 12 of the Constitution has no application to the facts of this case.

This brings us to the crucial point presented by this record, and I am of the opinion that said Section 20 of the Constitution has no application whatever to this case.

It will be observed by reading said section that it expressly prohibits the Legislature from "granting the right to construct and operate a street railroad within any city, . . . without first acquiring the consent of the local authorities," etc. This court, as previously stated, has repeatedly held that this language of the Constitution not only prohibits the Legislature from granting that right to a street car company, but has affirmatively conferred the absolute and exclusive power upon the city to grant that right, or to absolutely deny it; but no authority whatever is thereby conferred upon the city to prescribe the terms and conditions upon which the street railroad may be constructed and operated upon the streets of the city, much less the power to fix or prescribe the fares the company may or may not charge for the transportation of passengers. But it is stated by counsel for respondent that this court has repeatedly held that the city in giving such consent may prescribe the fares it may charge. Counsel are mistaken in that assertion. Insofar as I have been able to ascertain, no such question has even been before this court, much less decided by it. As I understand the decisions, the furthest this court has gone in that direction was to hold that because the city could altogether deny a street car company the right to operate its roads within the corporate limits, the city had the right to dictate the terms and

conditions upon which the road should be operated; the following cases go no further: Union Depot Ry. Co. v. Southern Ry. Co., supra; St. Louis & Meramec Ry. Co. v. City of Kirkwood, supra; Kansas City v. Belt Line Ry. Co., supra; City of St. Louis v. United Railways Co., supra.

But it should be observed that this court, in deciding that the city might dictate the terms and conditions upon which the road might be admitted into the city, did not hold that the power to so do was conferred upon it by said Section 20 of the Constitution, but placed its ruling squarely upon the ground that because the city had the absolute and exclusive right to exclude the roads from the city entirely, it might admit them upon such terms and conditions as it deemed proper; that the greater power to exclude them included the incidental right to admit them upon such terms and conditions as it might deem best. [St. Louis & Meramec Ry. Co. v. City of Kirkwood, 159 Mo. 239 l. c. 253.]

In the latter case, this court on page 253 quoted approvingly from the case of Allegheny City Railway, 159 Pa. St. 411, the following language: "The man who can give the whole, can give a part, or who can grant absolutely, can grant with a reservation of rent or other condition. He who can consent or refuse without reason does not make his consent or his refusal either better or worse by a good or bad reason." By parity of reasoning, it must be held that a city which can grant the whole can grant a part, that is, the whole burdened with conditions and limitations, and that a city which can absolutely refuse to grant permission to a street car company to construct and operate street railroads upon its streets may refuse the grant unless the company agrees to transport passengers for certain fares. But that does not signify that the power of the city to impose these conditions and limitations, or the right to stipulate for fares, is derived from the constitutional provision granting to the city the power to consent to the company entering

the city; the two powers are separate and distinct. The thought I am trying to express is this: Under the constitutional provision mentioned, the city had the power to authorize the construction and operation of street railways upon the streets thereof without conditions or limitations, had it deemed it wise to have done so, in which case the common law would have permitted the company to charge reasonable fares for the services to be performed by it, or in such a case the Legislature could have fixed the fares to be charged, and neither rate so fixed would have done violence to the constitutional provision mentioned. There is not a word in the Constitution repealing the common law in that regard, or which would have prohibited the Legislature from having fixed the fares, had it seen fit to have done so. This is true, because the Legislature has absolute power to legislate upon any subject it may deem proper, in the absence of express constitutional prohibition, or by necessary implication to be drawn from that which is expressly stated therein. By reading this provision of the Constitution, it will be seen that it contains no language which expressly or by necessary implication prohibits such legislation. That being true, how can it be logically said the Legislature does not now have the constitutional authority to enact such legislation, or that it did not have that power when it authorized the Public Service Commission to increase the fares? I submit that this question cannot be answered in the negative.

It must be borne in mind that I am not now dealing with that constitutional provision which prohibits the enactment of any law which impairs the obligaton of a contract and which will be considered later, but said Section 20 of Article 12, which it is contended has abridged the police power of the State, and prevents the Legislature from fixing fares to be charged by street car companies in the City of St. Louis.

The same general rule is announced in Union Depot Ry. Co. v. Southern Railway Co., 105 Mo. 562, l. c. 573. In that case, while the court recognizes the

exclusive power of the city to grant consent to street railroad companies to construct and operate street railways upon its streets, yet it clearly placed the city's authority to permit one company to run it cars over the track of another company, not upon the constitutiónal provision mentioned, but upon "the *reserved* power of the city in the interest of the public welfare to permit any other company to run its cars over the plaintiff's road; for such is the contract between the plaintiff and the city." By that same authority, if we may so call it, the city had the power to stipulate with the Railways Company regarding the fares it should charge for the service to be performed by it. This was not because the Constitution authorized the city to prescribe the conditions before mentioned, but because it did not prohibit the city from so doing; it might, therefore, independent of the Constitution, incidently in furtherance of the public good, prescribe such terms. If that is not true, then clearly the city had no authority whatever to contract with the Railways Company as to the fares that should be charged.

A similar question of power came before this court in the case of State v. Parker Distilling Company, 236 Mo. 219. There it was conceded, and all of the authorities held, that the Legislature had the absolute and exclusive power to prohibit the manufacture and sale of intoxicating liquors in this State; that notwithstanding that power, counsel for the defendant contended that the act of the Legislature providing for licensing manufacturers of malt and spiritous liquors to do business in this State, was void because it made no provision for their regulation. After an exhaustive review of all the authorities, State and Federal, bearing upon the question of power, this court in that case, on page 274 used this language:

"When we bear in mind the foregoing idea, that the liquor traffic in this State has no legal rights, save and except those expressly granted by license and the statute under which it is issued, then we can more clearly see that the State may impose such conditions,

burdens and regulations as it may deem wise and proper, and no one who engages therein has a right to complain thereof.

"The authorities fully support the proposition that the imposition of the license tax alone is the exercise of the police power, and that the person who desires to engage in the liquor traffic must pay, or agree to pay, that tax, before the license will issue, and the question of regulation is foreign to the subject. The manner and extent of the regulation rests exclusively in the discretion of the State. The regulations may be much, little or none, as the Legislature may deem wise, and this is the first time I ever heard the validity of such a law being questioned by those engaged in the liquor business, because it provides for slight rather than stringent regulation."

The same is true in the case at bar. The power of the city under the constitutional provision mentioned to grant consent to the company to enter the city was absolute and rested exclusively with the former; it, therefore, might place such conditions and limitations upon such consent or none at all as it deemed proper. But the power to impose such conditions and limitations is wholly different from the power to give consent.

I, therefore, feel confident that the City of St. Louis, under the greater power to admit or deny the Railways Company the right to enter the city, was left at full liberty, not under the constitutional provision mentioned, but under its general reserved powers, to impose such terms and conditions upon the company as it deemed proper in permitting it to operate its railways upon the streets of the city; this of course included the power to fix by agreement the fares to be charged by the company for the services to be performed under its charter, yet in line with the public policy of the State, as gathered from the general trend of the laws enacted for the general welfare of all.

The same principle is announced in the case of Thrasher v. City of Kirksville et al., 204 S. W. 804. That was a suit brought by the property owners against

the assignees of special tax bills issued in payment of the contract price for constructing a public sewer in that city. The ordinance ordering the work to be done required the city clerk to advertise for bids, and that the contract for the construction of the sewer should be let to the lowest and best bidder, while the charter of the city, Section 9241 and 9254, Revised Statutes 1909, was absolutely silent upon the question, making no such requirements. For this reason the city clerk did not advertise for bids as required by ordinance. There was but one bid, and that was made by Grassle Bros. who performed the work and assigned the bills to the defendants. Counsel for defendants contended that because the charter of the city did not authorize the clerk to advertise for bids, nor that the contract should be let to the lowest and best bidder, the city had no power or authority to enact the ordinance making those requirements, and therefore the ordinance was void, and the tax bills were just as valid as if the ordinance had not been enacted, and as though the work had been done under a private contract as contemplated by the charter. This court, in that case, held that the tax bills were void because the contract was not awarded according to the ordinance mentioned; and stated that if the contract had been let according to the charter provisions without the enactment of the ordinance, the bills would have been valid, but having been let after the passage of the ordinance and in violation of its terms, the bills were void. The reason assigned was that the charter did not prohibit the city from advertising for bids, nor to let the contract to the lowest and best bidder, but since that was the mode of letting such contracts and was not prohibited by the charter, and in harmony with the general welfare of the city and her citizens, the court was unwilling to hold the bills invalid.

The following cases announce the same rule, and are cited with approval in: Thrasher v. Kirksville, supra; Galbreath v. Newton, 30 Mo. App. 1. c. 394; Clapton v. Taylor, 49 Mo. App. 117; Keane v. Cushing,

15 Mo. App. 96; Cole v. Skrainka, 105 Mo. 303; Excelsior Springs v. Ettenson, 120 Mo. App. l. c. 223; Springfield v. Weaver, 137 Mo. 650.

In the last case this court, on page 667 and 668, used this language: "While the statute governing cities of the third class does not require contracts to be let out to bidders, it makes no contrary or inconsistent requirement. The council, then, had the undoubted power to require contracts to be let in that manner."

The same is true of the case at bar. Section 20 of Article 12 of the Constitutional authorized the City of St. Louis to permit street car companies to construct and operate street railroads upon the streets thereof, but did not require the city to fix the fares, nor does it prohibit the city from so doing. The council then, according to the ruling in the case last cited, had the undoubted power to require the railways companies to carry passengers for the sums stated in the ordinance. This was clearly upon the theory that such requirement was not prohibited by the Constitution, but was in keeping with the general mode of granting to street railroads permission to enter cities, towns and villages throughout this State, if not the country at large, and was in harmony with the general well-being of the city and the inhabitants thereof, and for that reason the city council had the unquestionable authority independent of the Constitution to fix the fares to be charged by the ordinance.

When reduced to their final analysis, the foregoing authorities in substance announce this rule: That where a person or corporation, including a city, has the *absolute and exclusive* legal power or authority to do or not to do a particular thing, then *no additional power or authority, except mental capacity and physical force, is necessary to enable such person, corporation or city to impose such conditions or limitations as he or it may deem proper upon the mode or manner of the performance or non-performance of that thing.* Possibly sound public policy of the State and the general-wel-

fare clause of a city charter might condemn any condition or limitation attached thereto which would be detrimental to the public good. This is not only elementary, but seems to me to be self-evident. Moreover, if this is not the law, then a county court, under this same Section 20 of Article 12 of the Constitution, could, with this same irrevocable authority, require a street-car company to agree to pay five cents fare for each passenger carried by it for the consent of the former to the latter to cross over or along any public road in the county. It the city had that irrevocable authority, then undoubtedly the county court, after granting its consent, would be irrevocably bound thereby, however oppressive a compliance with the contract might become, even to the extent of forcing the company into bankruptcy, and to permanently suspend the operation of the road; and there would be absolutely no relief for such a deplorable condition, except an amendment to the Constitution, in that regard, which would take months, if not years to do, to say nothing of the cost and inconvenience to the traveling public during that time. That same deplorable condition might befall the Railways Company and the people of the City of St. Louis and there would be no remedy except as before stated. Certainly that was not the intention of the framers of the Constitution.

Again, if a county court may permit a street car company to operate its roads over the public roads of the county without conditions imposed or duties required, why may not a city do the same? Both are governed by the same constitutional provision, and, if the court should so grant its consent, may not the Legislature subsequently impose duties and burdens upon the company for the privilege of continuing to operate its cars over the public roads? Certainly it may; this has been frequently done by county courts and city councils, such as requiring such companies to construct and maintain bridges, viaducts, etc. Or suppose the county court should, as a condition to its consent to let the company occupy a public road, require it to agree to

maintain a free ferry across the river dividing its railway into two parts, which would be very valuable to the traveling public, yet could it be seriously contended that the court could not, in case of necessity, relieve the company from the obligations of that contract, even though such release would greatly increase the cost of travel to the public? I think not; clearly there is nothing in the Constitution denying such right.

If I am correct in the foregoing conclusion, then the Legislature had the undoubted authority under the police power of the State to increase or decrease those fares as it deems proper or to authorize the Public Service Commission to do the same. The following cases so hold: State ex rel. v. Public Service Commission, 275 Mo. 201; City of Fulton v. Public Service Commission, 275 Mo. 67; Public Utilities Commission v. Railroad, 275 Ill. 555, 570; Chicago v. O'Connell, 278 Ill. 591; Atlantic Coast Electric Ry. Co. v. Commission, 104 Atl. 218; Collingswood Sewerage Co. v. Collingswood, 102 Atl. 901; Salt Lake v. Light & Traction Co., 173 Pac. (Utah) 556.

And this is true whether the franchise ordinance mentioned is considered as a contract or a regulation enactment; it having been enacted and agreed to subject to the police power of the State, it must give way upon the exercise of that power by the Legislature or by its duly authorized agent, the Public Service Commission; and it having acted the ordinance or contract, as you may deem it, must give way to the extent hereinbefore stated. [State ex rel. v. Public Service Commission, 275 Mo. 201; City of Fulton v. Public Service Commission, 275 Mo. 67.]

There are other cases in and out of this State announcing the same doctrine, and some in other states and possibly one in this State, State ex rel. St. Joseph Water Co. v. Easton, 192 S. W. 1006, announcing a contrary doctrine, especially in the case of Matter of Quinby v. Public Service Commission, 223 N. Y. 244. But after careful consideration of all of them, we are

satisfied upon both reason and authority the rule announced in this State is the correct one.

II. The other legal proposition referred to in the former part of this opinion is, in brief, whether or not under the Scheme and Charter of the City of St. Louis the act of the Legislature creating the Public Service Commission and defining its powers and prescribing its duties is applicable to the City of St. Louis.

City of St. Louis.

This proposition must be decided in the affirmative. Section 23 of Article 9 of the Constitution in express terms provides that "the charter and amendments shall always be in harmony with and subject to the Constitution and laws of Missouri," etc.; and Section 25 of the same article also expressly provides that "the General Assembly shall have the same power over the city and county of St. Louis that it has over other cities and counties of this State."

This is not a new question before this court. The same ruling as above announced was made in the case of Ewing v. Hoblitzelle, 85 Mo. 64, l. c. 76, and State ex rel. Garner v. Missouri and Kansas Telephone Co., 189 Mo. 83, l. c. 99.

We are, therefore, of the opinion that the judgment of the circuit court should be reversed and the cause remanded with directions to proceed with the cause as required by law.

*Faris, Walker* and *Graves, JJ.,* concur; *Bond, C. J.,* concurs in separate opinion, in which *Faris, Blair* and *Williams, JJ.,* concur.

BOND, C. J. (concurring).—Where not constitutionally inhibited, the power to fix rates of steam and street railroads is a legislative faculty which is delegable to a Public Service Commission. Neither the Legislature nor its administrative agency can fix rates which are confiscatory of the property of the carrier. If there had been a specific rate per passenger prescribed by a general statute at the time the street rail-

road was chartered, the City of St. Louis could not have contracted for a different rate as the price of admitting the carrier; for its charter powers are subordinate to the general laws of the State. This power of the Legislature fully existing, though unexerted, at the time of the incorporation of the street railway, was subsequently delegated to the Public Service Commission, who thereby became empowered to prescribe rates, reasonable and lawful, and subject to judicial review, which should displace any prior rates prescribed by the municipality, which said municipality was entitled to make in its capacity as an auxilliary but subordinate governmental agency. The parent body, the State, through its Legislature, might have altered any rate which it might have fixed when the carrier was incorporated in virtue of its inalienable police powers.

It necessarily follows that a Public Service Commission, clothed *quod hoc* with this legislative authority, might prescribe rates conformable to the preservation of an utility necessary to the public convenience and welfare.

This is exactly what was ruled in the Sedalia and Fulton cases, under which the conclusion is inescapable that the action of the circuit court in setting aside the finding of the Public Service Commission was error. Hence, my concurrence in the reversal of the judgment of the circuit court and the affirmance of the order of the Commission. *Faris, Blair* and *Williams, JJ.,* concur in this opinion.