The Public Service Commission decided it was without jurisdiction to entertain a proceeding of this kind, whatever merit might seem to inhere in the facts of a particular case. Whether this view is right or wrong is the sole question presented by this record. Since it has been suggested that the proceeding did not ride off before the Commission on the question of jurisdiction, an examination of its opinion is pertinent. In that opinion the conceded and conclusively established facts were stated as such, and the tendency of the evidence was stated as to the rest. After stating these things and observing that after an application to the city for leave to remove the tracks in question here, appellant "instituted this proceeding before the Commission," that tribunal stated the question before it thus:"The city has challenged the jurisdiction of the Commission togrant the relief prayed for and we have concluded this contentionis well founded." The Commission then proceeds to give its reasons for the *Page 62 
conclusion. It holds (1) that "we have failed to find any authority in the Public Service Commission Law specifically conferring upon the Commission power to relieve a street railway company from the performance of franchise provisions granted by the city and accepted by the company, nor do we find such power necessary to enable the Commission to carry out the purpose of the law," and (2) that "we reach the same conclusion if we consider the authority of the city as to matters properly included within the franchise granted by it to the street railway company. Section 20 of Article 12, of the Constitution of this State provides," etc. After discussing, in this connection, Section 20 of Article 12 of the Constitution, the Commission, in its opinion, says: "Our conclusion is, that however meritoriousthe case presented by the company may be on its facts, this Commission is not clothed with power to grant the relief sought." After discussing a cross-complaint of the city and holding it cannot be considered, the opinion concludes: "It follows from the views expressed that the complaint should be dismissed."
It is too obvious for discussion that this opinion of the Commission holds exactly what it says in express words, i.e. that the contention of the city that the Commission has no jurisdiction "is well founded." In State ex rel. v. Public Service Commission, 259 Mo. l.c. 710, the Commission had held it was "without authority to grant the relief prayed for `regardless of any evidence that may be submitted' and `regardless of the fact that complainant may show such rates, fares and charges to be unjust, unreasonable and confiscatory of its property.'" This court held the Commission had power and ordered it to proceed with the matter and dispose of it "as the facts warrant." In this case the Commission has made an express finding it has no jurisdiction, refused for that reason to consider the evidence in reaching its decision, and, I repeat, the sole question is whether this finding of no jurisdiction is correct under the law. *Page 63 
I. In State ex rel. Public Service Commission v. Missouri Southern Railway, 279 Mo. 460 and 489, 214 S.W. 381, it was held that a railroad company could not abandon tracks, operated in connection with its main line, without first securing permission from the Public Service Commission so to do. Identical provisions of the Public Service Commission Act of 1913 discloseAbandoning the intent of the Legislature to apply the sameTracks. principle to street railways. If these statutory provisions are valid and applicable to relator, then the Commission has reached an incorrect conclusion as to its jurisdiction.
II. The only constitutional provision which is put forward as justifying the holding of the Commission is Section 20 of Article 12 of the Constitution of the State, which is set out in the opinion prepared by Judge BOND in Division and transferred to Court in Banc with the case. This section expressly, so far as concerns the questions in this case, provides that the General Assembly shall not pass any law "granting the right to construct and operate a street railroad within any city . . . without first acquiring the consent" of such city. It is argued this section justifies the action of the Commission in this proceeding. There are two reasons why this position is not tenable here.
There is no contention possible that Section 20 of Article 12 expressly provides that a street railway, properly admitted into a city, cannot be permitted by the State to take up an unprofitable portion of its tracks. All that could be claimed is that the city can impose such conditions as the price of its consent or that such conditions is necessarily implied.
(a) The question whether the franchise ordinance contains express provisions denying the company the right to take up a part of its tracks when the consent of the State is procured, and the question whether that ordinance in itself by its terms and conditions permits *Page 64 
the company to remove unprofitable parts of its tracks, cannot be reached in this case. These are questions of factMatters for and for determination, in the first place, by theReview. Public Service Commission. This appeal is from an order refusing to proceed to the consideration of the case, on the ground that the Commission has no power to do so. Whether there is a valid franchise contract between relator and the city which enables the latter effectually to resist the order sought, or, in the absence of such a franchise contract, whether the facts justify such an order are matters for investigation after jurisdiction has been assumed. The power of this court is simply one of review, and we are not authorized to review the facts, and make a finding of our own thereon until after the Commission has exerted its power over the facts and made its finding, one way or another. This is true regardless of the manner in which the law allows this Court to review the evidence on appeal in a case like this. For this reason, alone, the judgment should be reversed and the cause remanded to the Commission for the performance of its proper function.
(b) So far as concerns the question of implying a condition from the grant of the right to enter, it is manifest none can be implied in contradiction of the terms of the franchise ordinance. Whether such an implication in this case would contravene that ordinance is a question reached only after theImplication. Commission assumes jurisdiction and reaches the facts. This it has not done. For this reason this theory of implication does not answer what is said under (a) supra.
III. Even if it be assumed that what is said in Paragraph II, supra, is not sufficient to preclude, in the circumstances of this appeal, the further consideration of the case, and that we can assume the franchise ordinance does not expressly or impliedly permit the company to remove tracksPermission to under circumstances the evidence is said to tendRemove Tracks. *Page 65 
to show in this case, the holding of the Commission that it had no jurisdiction is nevertheless erroneous.
(a) It does not appear that the city has actually imposed any condition relating to the right of the street car company to take up track under circumstances which, in the absence of such conditions, would render it lawful.
(b) It has been suggested that since the city consented to the use of certain streets then, if abandonment of a part is permitted, it cannot be said the city ever consented to the entry. This view seems based upon the idea that since the city did not originally consent to the use, solely, ofNeutralizing such streets as would be occupied after a partConsent. abandonment, the consent of the city completely disappears simultaneously with the taking up of part of the track. The query is, "When did the city ever consent to the use, by themselves, of the parts of the street still occupied after a part abandonment is permitted?" The question this argument is used to answer is whether in giving its consent, the city gives it subject to all the applicable law and in anticipation of the application of that law to its consent, and whether the law applicable permits the State to authorize the abandonment of a part of the whole line to which the consent applied. In such a situation to argue that the consent never was given if part, in a proper case, is permitted to be removed, is to assume that to be true which it is the purpose of the argument to prove. The argument proceeds in a circle. When the question is whether consent was given subject to existing law and whether that law is a certain thing, it is no answer to say that "consent was not given subject to such law because, if the existing law applied to the consent then consent was never given." The argument cannot be advanced by this mode of reasoning.
(c) Like observations apply with equal force to certain arguments based upon the declaration that the constitutional provision is designed to confer upon the city "supreme power" over its streets, and it would *Page 66 
be anomalous to hold that the constitutional provision "while conferring absolute power upon a city to grant theAbandonment use of its streets in the first instance, it wouldAt Will. nevertheless permit a railway company, when the use had been granted, to abandon it at its will, regardless not only of the rights of the city but of the public." This is subject, also, to the further criticism that no effort is being made to justify any view that the company could "abandon the use" of city streets "at its will" in any case. In fact, it has been held it can do nothing of the kind. This proceeding shows it is attempting nothing of the kind. In no event could it abandon a street except upon a showing that convinced the Commission or this court that the public would not be injured. The existence of this proceeding necessarily implies that much. Recurring to the first observation concerning this last mentioned argument, it is clear that in considering the question whether the city possesses a certain right or power, it is not sound argument to assume "the city's power is `supreme,' is `absolute,' and, therefore, it has the power we are inquiring about."
(d) It is said further that "the power to grant the right to use the streets in the first instance carries with it the consequent power to regulate that use when granted. This is true not only on general principles, but is emphatically so here because of the contractual relation created betweenRegulation. the city and the street railway company by the grant of the use of the streets, and also on account of the public service character of the company." The question of theregulation of the use of the streets during occupancy is not in this case. The contractual relation cannot be assumed in argument to be this or that since the inquiry here is what that contractual relation is and includes. The public service character of the relator is the thing which subjects it to regulation, but that character does not answer the question whether the regulatory power extends to a particular thing in this particular case. *Page 67 
(e) Another argument advanced is based upon the view that since the franchise ordinance gave the relator the right to operate for forty-nine years, therefore the franchise ordinance became acontract to operate for forty-nine years the whole line, without change. This is necessarily predicated upon the idea that the Commission took jurisdiction of the case andContract to that it based its finding upon the evidence. TheOperate. fallacy of this has been pointed out. The Commission held that the question presented was whether it had jurisdiction. It then held it had jurisdiction, could have none under any conceivable state of evidence, refused to consider the facts and dismissed the complaint because it had no jurisdiction. Further, the franchise ordinance did not constitute a contract to operate forty-nine years. This feature of the franchise was not contractual or obligatory. It was permissive. Though it be assumed the city might have imposed an obligation to operate for a fixed period, it cannot be claimed this ordinance pretends to do so by its terms. The effort made in the argument now under consideration is to imply such an obligation from a grant of a right. If this implication arises in this case it arises in every case. It does not depend upon the constitutional provision referred to. It is argued it is a condition protected by that constitutional provision. It is not one arising out of it. It amounts, therefore, to a declaration that, as a matter of law, whenever a street car company (railroad and other public service corporation, as well) enters upon the enjoyment of franchise rights, or part of franchise rights granted it, it is obligated to operate the whole during the full period for which the right to operate is granted. This is raising an implication not at all necessary on the facts and clearly in restriction of the police power of the State. During the time the company operated it would be subject to all valid ordinance regulations whether in the franchise or subsequently enacted. The argument implies from the franchise ordinance and a building of the *Page 68 
car lines over a part of the streets designated therein, a contract, to operate the lines built, during the whole time over which the right might extend, affixes this implied contract, as a condition, to the consent to enter the city, and holds that this is protected from interference by the State in the exercise of the police power. In the first place, as pointed out, it is not pertinent to the question of jurisdiction; second, it assumes a permissive grant to be a contract; third, it holds that a condition implied from an arrangement between a public service corporation and a municipality by its own force frees itself from the exercise by the State of the police power, regardless of its effect in burdening the public with the necessity of paying, on going lines, the expenses of the operation of useless appendages to a street car system. In this case the burden would fall upon those using relator's interurban lines. The principle sought to be established by this argument must be as broad as we have stated it or it is of no force at all to prevent the intervention of the State through the Commission.
IV. It has been consistently held that in giving its consent to the use of its streets by a street railway a city lawfully may impose conditions. The cases are collected in City of St. Louis v. Pub. Serv. Comm., 207 S.W. 799. The authority of the city to condition its assent is not expressly conferred byConditions. Section 20 of Article 12. The power is implied from the right entirely to withhold such assent. Section 20 introduced no new principle and created no new right. It merely made secure from legislative interference the right of the municipality to deny entrance to a street railway, a right theretofore quite generally existing and exercised under statutory or charter provisions. Nothing was added to the power itself by making the Constitution rather than the statutes the repository of the power. The right of the city to impose conditions is still an implied right. This right or power is not unlimited. At least as between the municipality and the public as represented by the General Assembly, the *Page 69 
conditions affixed to the consent must be within the scope of municipal authority. Section 20 of Article 12 does not confer upon the city authority, by means of conditions imposed, to draw under its dominion subject-matter not otherwise within its jurisdiction. Neither can such conditions be employed to require the performance of a forbidden act nor to limit the taxing power of the Legislature. The question of estoppel in favor of the city, referred to in cases in this State, does not arise in a case in which the public, represented by the Commission, is a substantial party. It is also settled that a city by means of conditions engrafted upon consent cannot limit, control or interfere with the police power or its exertion in the regulation of street railways. [3 Dillon on Mun. Corp. sec. 1229; St. Louis v. Pub. Serv. Com., supra.] These limitations upon the city's power to condition its consent existed before the adoption of the Constitution. They arise irresistibly out of the nature of municipalities and their relations to the State. They were carried into Section 20 of Article 12 as certainly as was the power to impose conditions at all.
Formerly the Legislature had full power over city streets and rights of street railways thereon. It is still the source of thepowers of a street railway organized in this State. The charter is from the State. Such charter does not relieve the corporation from obedience to regulatory statutes valid as exertions of the police power. Neither, as stated, can the city in the exercise of its power to condition its consent, whether by franchise contract or otherwise, curtail the police power vested in the Legislature. [State v. Railroad, 242 Mo. l.c. 375; City of Fulton v. Pub. Serv. Com., 275 Mo. 67; City of St. Louis v. Pub. Serv. Com., 207 S.W. l.c. 805.]
The power of the city to refuse admission to a street railway is beyond legislative control. Doubtless there are conditions which may be affixed pursuant to the city's implied power under Section 20 which are equally exempt therefrom. A city in a particular case might impose *Page 70 
conditions which are invalid, and it may be the city would not have given its assent to the entry of the company except for these conditions. Whether such conditions are merely void or whether their invalidity is ground for avoiding the whole franchise are not questions determinable on this record.
I concur in the opinion of Judge BOND except as herein otherwise indicated. Woodson, Williamson and Goode, JJ.,
concur.