BERTHA A. MINING COMPANY, Appellant, v. THE EMPIRE DISTRICT ELECTRIC COMPANY, Respondent.

Springfield Court of Appeals, December 5, 1921.

1. **ELECTRICITY: Public Service Commissions May Fix Rates Under Police Power, Notwithstanding Contracts and Ordinances.** The Public Service Commission has the power to fix reasonable rates for public service companies furnishing electricity, etc., subject to court review as to reasonableness, and this power the Commission has, by delegation from the Legislature, in the exercise of police power, notwithstanding contracts and ordinances.

2. ————: **Contract for Furnishing Electricity Held not "Sliding Scale," Within Statute.** Rates for electricity agreed upon between a mining company and a public utility company, varying according to the amount of use per horse power of connected capacity, *held* not a sliding scale schedule, within Revised Statutes 1919, section 10477, subd. 4, so as to constitute an exception to the power of the Public Service Commission to change rates; a "sliding scale," within such statute, being one for the automatic adjustment of rates used upon service rendered and dividends paid stockholders, whereby for every decrease or increase in the rate the stockholders are permitted an increase or are compelled to suffer a decrease in the rate of dividend.

Appeal from Jasper County Circuit Court.—*Hon. J. D. Perkins,* Judge.

AFFIRMED.

*C. C. Spencer* and *A. E. Spencer* for respondent.

"Where the bill states matter within the equity jurisdiction, but plaintiff fails to establish such equity, the rule is that the bill must .be dismissed and cannot be retained for the purpose of allowing legal relief to which plaintiff has shown himself entitled." 16 Cyc, 111; Fowles v. Bentley, 135 Mo. App. 417-436; Miller v. Railroad, 162 Mo. 424; Mansfield v. Bank, 74 Mo. App. 200; Linden Inv. Co. v. Houstain, 221 Fed. 178.

BRADLEY, J.—January 23, 1915, plaintiff and defendant entered into a contract whereby defendant agreed for a fixed charge to furnish plaintiff's mines with electricity for the period of ten years. Defendant furnished the electricity as per contract until January 1, 1918. At that time defendant sought to put in force and collect for rates which had been applied for and allowed by the Missouri Public Service Commission. The difference between the old and the new rates for January and February, 1918, amounted to $3985.29. The cause here is in equity to enjoin and restrain defendant from shutting off the power to plaintiff's mines, which it had threatened, to do, and also to recover the $3985.29 which plaintiff paid under protest. On trial below defendant prevailed and plaintiff's bill was dismissed. Plaintiff after its motion for a new trial was overruled filed its affidavit for an appeal. The appeal was granted to the Supreme Court, and by that court transferred to this court. [Bertha A. Mining Co. v. Empire District Electric Co., 232 S. W. 113.] Plaintiff's petition is set out in full in the statement of the Supreme Court to which we make reference for a fuller statement of plaintiff's case. The answer admits the contract, and the charges in excess thereof, but seeks to avoid liability and to escape the compulsory arm of the court by pleading its public service character, and the order of the Public Service Commission effective January 1, 1918, fixing a rate higher than the contract rate with plaintiff.

The rates fixed by the contract January 23, 1915, was in accordance with the rates then fixed by the Public Service Commission. There have been numerous opinions by our Supreme Court that our Public Service Commission has the power to fix reasonable rates for public service companies, furnishing electricity, etc., subject to court review as to the reasonableness, and this power the Public Service Commission has, by delegation from the Legislature in the exercise of the police power, notwithstanding contracts and ordinances. [St. Louis v. Public Service Commission, 276 Mo. 509, 207 S. W. 799; State ex rel. City of Sedalia v. Public Service Commission, 204 S. W. (Mo.) 497.] In the latter case, page 499, Judge GRAVES, speaking for the court said: "We have preferred to rest the ruling in this case upon what this court has previously ruled, which rulings have been in the light of our own peculiar constitutional provisions. Under it the sovereign police power of the State is preserved intact irrespective of contracts with reference to rates for public service. Under it no contract as to rates will stand as against the order of the Public Service Commission for reasonable rates, whether such reasonable rates be lower or higher than the contract rate. Under the Constitution and the Public Service Commission Act, the Public Service Commission (supervised by the courts as to the reasonableness of rates), is exercising the police power of the state by its delegated authority from the Legislature. Its rates therefore constitutionally and legally supersede any and all contract rates."

Plaintiff makes no contention but that the Public Service Commission with its delegated authority is ordinarily all powerful in questions like and similar to the issues here, but it says that subdivision 4 of section 68, Laws 1413, p. 602, of the Public Service Act, now section 10477 Revised Statutes 1919, makes the necessary exception and authorizes the very kind of contract that plaintiff is standing on. Section 10477 is as follows: "1. Every gas corporation, every electrical corporation, every water

corporation and every municipality shall furnish and provide such service, instrumentalities and facilities as shall be safe and adequate and in all respects just and reasonable. All charges made or demanded by any such gas corporation, electrical corporation, water corporation or municipality for gas, electricity, water or any service rendered or to be rendered, shall be just and reasonable and not more than allowed by law or by order or decision of the commission. Every unjust or unreasonable charge made or demanded for gas, electricity, water or any such service, or in connection therewith, or in excess of that allowed by law or by order or decision of the commission is prohibited.

"2. No gas corporation, electrical corporation, water corporation or municipality, shall directly or indirectly by any special rate, rebate, drawback or other device or method, charge, demand, collect or receive from any person or corporation a greater or less compensation for gas, electricity, water or for any service rendered or to be rendered or in connection therewith, except as authorized in this chapter, than it charges, demands, collects or receives from any other person or corporation for doing a like and contemporaneous service with respect thereto under the same or substantially similar circumstances or conditions.

"3. No gas corporation, electrical corporation, water corporation or municipality shall make or grant any undue or unreasonable preference or advantage to any person, corporation or locality, or to any particular description of service in any respect whatsoever, or subject any particular person, corporation or locality or any particular description of service to any undue or unreasonable prejudice or disadvantage in any respect whatsoever.

"4. Nothing in this section shall be taken to prohibit a gas corporation, electrical corporation or water corporation from establishing a sliding scale for a fixed period for the automatic adjustment of charges for gas, electricity, water, or any service rendered or to be ren-

210 M. A.—40

dered and the dividends to be paid stockholders of such gas corporation, electrical corporation or water corporation: Provided, that the sliding scale shall first have been filed with and approved by the commission; but nothing in this subdivision shall operate to prevent the commission after the expiration of such fixed period from fixing proper, just and reasonable rates and charges to be made for service as authorized in this article.''

Subdivisions 2 and 3 of said section certainly are against plaintiff's contract, and unless it is saved by subdivision 4 it is gone the way of many another contract since the days of 1913 and the Public Service Commission. The rate schedule in effect at the date of plaintiff's contract varied the charge according to the quantity of consumption, and varied the rate of discount according to the total connected horse power. The schedule applicable to plaintiff and on file with and approved by the Public Service Commission when plaintiff made its contract January 23, 1915, and it is agreed that the contract did not violate such schedule, is as follows: Rate for first 50 hours, use each month per H. P. of connected capacity, per horse power hour—3c. For next 200 hours use each month per H. P. of connected capacity, per horse power hour—1c; for all over 250 hours, etc., so much. Discounts: Based upon total horse power connected:

| | |
|---|---|
| 50-99 HP | Net. |
| 100-149 HP | 5 per cent. |
| 150-199 HP | 6 per cent. |
| 200-249 HP | 7 per cent. |
| 250-299 HP | 8 per cent. |
| 300-349 HP | 9 per cent. |
| 350-399 HP | 10 per cent. |
| 400-449 HP | 11 per cent. |
| 450-499 HP | 12 per cent. |
| 500-549 HP | 13 per cent. |
| 550-599 HP | 14 per cent. |
| 600-649 HP | 15 per cent. |
| 650-699 HP | 16 per cent. |

700-799 HP   17 per cent.
800-899 HP   18 per cent.
900-999 HP   19 per cent.
1000 and over 20 per cent.

The schedule effective January 1, 1918, was the same in character as the old schedule, but with provision for additional discounts, and an additional charge as follows: "Beginning with the January, 1918, bills, an additional charge of 2⅝ mills ($.002625) per horse power hour will be made for all energy delivered in excess of 1000 horse power hours per month. This charge will not be subject to any discount, but will be subject to the following correction factor based on the variation in the cost per ton of coal used. For each one cent (1 cent) increase or decrease in the cost per ton of coal used, based upon a price of three dollars ($3) per short ton consisting of cost at mines and freight charges, the net rate per horse power hour will be correspondingly increased or decreased one one-hundredth of a mill ($.00001)."

Plaintiff contends that the above schedule is of the "sliding scale" variety authorized by subdivision 4 of section 10477, supra. If so then plaintiff's contract would seem to have ample support. But we cannot agree that such a schedule is within the sliding scale kind mentioned in subdivision 4. The sliding scale schedule mentioned in subdivision 4 must be for a fixed period. The schedule of 1913 on file and in force when the contract between plaintiff and defendant was entered into in January, 1915, was *not* for a fixed period. If it be contended that the contract itself constitutes the sliding scale, then the contract fails of effect because it was not filed with nor approved by the Public Service Commission. When the sliding scale mentioned in subdivision 4 is established it, according to the statute, must be *for* the automatic adjustment of charges for electricity or service rendered *and* the dividends to be paid stockholders. It does not appear that the dividends that might be paid were in anywise connected with the schedule of 1918 or the contract with plaintiff in so far as the power of the Public

Service Commission is concerned, except that dividends may be limited by the net income. But as to what amount of the net income would be distributed as dividends the Commission would have no power to say, and neither would such be *automatically* regulated by the schedule, as would be the case if such schedule were of the sliding scale character as we understand that term to mean. *Sliding Scale* is explained in Pond on Public Utilities, section 463, as follows: ''The fixed rate can be reduced without materially affecting the net income by improving the service and extending the field to which the service is furnished because a reduction in the rates as well as the improvement and extension of the service will naturally result in increasing the volume of the business with the effect of increasing the net income sufficiently to permit of a reduction in the rates without actually decreasing the income, unless it be in the case of the municipal public utility providing telephone service where the increase in the volume of the business seems not to be attended with the ordinary relative decrease in the cost of the service of the expense of operating the system. Recognition of this fact is the basis of the so-called sliding scale, whereby the income which the municipal public utility is permitted to earn is increased as the rate charged for the service rendered is decreased. That the desire for increasing the amount of the income, which under this system automatically decreases the rate received for the service, may not result in decreasing the standard and quality of the service and such depreciation of the plant as ultimately to result in its destruction, the application of the sliding scale as a method of regulating rates must be accompanied by a definite standard of service and a strict requirement that the service be kept up to the standard. With this safeguard, however, the plan in certain cases is advantageous in that it furnishes a motive for the municipal public utility voluntarily to reduce its rates which is naturally accompanied by an increase in the volume of its business and so by a net increase in its income.''

In re Boston Consolidated Gas Company by the Massachusetts Board of Gas and Electric Light Commissioners, Public Utilities Reports, 1919A, page 699, it appears that the gas company under the sliding scale act of Massachusetts petitioned for a raise in the price of gas. The Commissioners in passing upon the petition said: "The act in question is the so-called "Sliding Scale" Act, modeled upon the English practice, and made applicable to the Boston company in 1906. The essential characteristic of this method of regulating the price of gas is by a prearranged automatic and interdependent adjustment of the price to consumers and the rate of dividends to stockholders, whereby for every decrease or increase in the price the stockholders are permitted an increase or suffer a decrease in the rate of dividend. In the Boston act, in section 1, the standard price was fixed at, and limited to, 90 cents, and the standard rate of dividends was fixed at 7 per cent.

Again on page 702 in the Boston Consolidated Gas Company case, supra, the Commissioners speaking of the sliding scale used this language: "The 'sliding scale' system of regulation makes reductions in price to the consumer depend solely upon the desire of the stockholders for greater dividends. It rests upon the belief that this desire will prove an effective stimulus to such increased skill and efficiency in management as will make lower prices to consumers probable. For its proper operation the conditions upon which the relation of price to dividend are established should be stable and likely to continue for a sufficient period to demonstrate the effectiveness of the incentives to good management. Otherwise the system will achieve little by way of actual regulation of price."

Defendant places some reliance on a clause in the contract—"Subject to rulings of the State Public Service Commission." This clause occurs at a place where it might be construed as defendant contends, but it is not necessary to go into this feature. Plaintiff's contract so far as affects rates is in the face of the statute

and its construction. If plaintiff desires to go back to the system of power it had prior to entering into the contract with defendant, it will be able to do so by complying with the terms of the contract respecting that feature as the validity of that feature is not involved here. The judgment should be affirmed and it is so ordered. *Cox, P. J.*, and *Farrington, J.*, concur.