SOUTHWEST MISSOURI RAILROAD COMPANY, Appellant, v. PUBLIC SERVICE COMMISSION.

In Banc, Feburary 16, 1920.

1. **STREET RAILWAY SPURS: Discontinuance.** The Public Service Commission has the power to authorize an interurban railway company, permitted by ordinance to lay its tracks in the streets of a city, to discontinue the use of spur tracks connecting the interurban system with railroad stations in said city, no longer essential to the operation of the interurban lines and operated at substantial loss.

    *Held*, by GRAVES, J., dissenting, with whom WALKER, C. J., concurs, that the Commission has no power to relieve a street railway company from its contractual obligation, imposed by its franchise ordinance, to maintain its tracks in designated streets for a designated period.

2. ————: ————: **Restriction on City's Power: Constitutional Provision.** That provision of the Constitution (Section 20 of Article

12) which forbids the General Assembly to grant the right to construct and operate a street railway within a city "without first acquiring the consent of the local authorities having control of the street" does not confer on the city power, either by ordinance or contract, to impose upon a public utility conditions of operation and maintenance which would confiscate its property or destroy its power to serve the public. This constitutional provision does not mean that a street railway, once properly admitted into the city, cannot be permitted by the State to take up an unprofitable portion of its tracks.

Held, by GRAVES, J., dissenting, with whom WALKER, C. J., concurs, that where the franchise contract imposes on the street railway company the obligation to operate the tracks, the State, without the city's consent, cannot, under said constitutional provision, grant permission to abandon the tracks, since the city has the right to impose the condition, and the operation of the tracks is not an exercise of a police regulation, such as is the increase or decrease of fares.

3. ———: ———: Denial for Lack of Jurisdiction: Questions for Review. When the Public Service Commission has dismissed the application of an interurban railway to discontinue the operation of certain spur tracks laid in the streets of a city, on the sole ground that it is without power to grant the relief, the question whether the franchise ordinance contains express provisions denying the company the right to take up a part of its tracks when the consent of the State is procured, and the question whether the ordinance in itself by its terms and conditions permits the company to remove unprofitable portions of its tracks, cannot be considered in an appeal from an order of the Commission refusing to consider the case on the ground that it had no jurisdiction. These are questions of fact and for determination by the Commission, and the power of the court is simply one of review, after jurisdiction has been assumed.

4. ———: ———: Consent of City: Abandonment of Track. It cannot be ruled that if the street railway company is permitted to remove its tracks from a part of the streets which the city consented it might occupy with its tracks, the consent of the city to the company to enter was not given at all.

5. ———: ———: Abandonment at Will. A street railway company which has obtained the city's consent to occupy certain streets with its tracks cannot abandon any of them at its will. In no event can it abandon a street except upon a showing that the public will not be injured.

6. ———: ———: Regulating Use. The power of the city to regulate the use of streets which the city has consented a street railway company may occupy is to be ascertained by the contractual re-

lation. The public service character of the company subjects it to regulation, but that fact does not determine whether the regulatory power extends to a particular thing.

7. ———: ———: **Permission to Occupy: Obligation.** A mere permission granted by the franchise ordinance to a railway company to occupy streets for forty-nine years is not a contract to operate for that period, nor can such an obligation be implied from the permission.

*Held,* by GRAVES, J., dissenting, with whom WALKER, C. J., concurs, that where the city has consented that a railway company may construct its lines in the streets upon condition that it operate them for 49 years, the condition is valid, does not transgress the police powers of the State, and can be abrogated only by consent of the city itself.

8. ———: **Conditions Imposed by Franchise.** The constitutional provision (Section 20 of Article 12) merely secured from legislative interference the right of a city to deny entrance to a street railway, and the right to impose conditions is implied, but is not unlimited, for the conditions must be within the scope of municipal authority. The city cannot, in the exercise of its power to condition its consent, whether by franchise contract or otherwise, curtail the police power vested in the Legislature, nor draw under its dominion subject-matter not otherwise within its jurisdiction.

*Held,* by GRAVES, J., dissenting, with whom WALKER, C. J., concurs, that a condition expressed in the franchise contract that a street railway shall operate its lines for a period of 49 years as the price of the city's consent to construct its tracks in designated streets is valid, does not contravene the police powers of the State, and therefore the Public Service Commission cannot grant to the company, without the city's consent, permission to abandon certain spur tracks, on the ground that their further operation is unprofitable and wasteful.

9. ———: ———: **Estoppel.** The question of estoppel in favor of a city, in consideration of conditions imposed upon a street railway company at the time a franchise ordinance to occupy the streets was enacted, does not arise in a case in which the public, represented by the Public Service Commission, is a substantial party.

Appeal from Cole Circuit Court.—*Hon. J. G. Slate, Judge.*

REVERSED AND REMANDED (*with directions*).

*McReynolds & McReynolds* for appellant.

The fact that the Constitution requires the consent of the municipal authorities to the grant of the use of the streets of such city for street railway purposes, does not prevent the Public Service Commission from granting to a street railway company relief from unreasonable requirements of an ordinance granting such franchise rights in the streets. A careful reading of Section 20 of Article 12 of the Constitution shows that the limitation on the power of the General Assembly is not general, but is strictly limited to the requirement that the consent of the local authorities having control of the streets intended to be used by the street railway must be obtained. The legislature is not even prohibited from fixing the manner and terms on which this consent may be obtained. An investigation of the statutory enactments since the Constitution of 1875 shows how the General Assembly has progressively assumed greater control over the granting of such franchises and placed limitations around the rights and powers of the municipality. R. S. 1879, sec. 4879; R. S. 1889, secs. 1523, 1824, 1825, 1826, 1827; Secs. 6115-6-7-8-9, R. S. 1899; Laws 1887, p. 40. A municipality has no power to grant a franchise to a railroad over its streets unless the same is given by constitutional or legislative authority. A. & P. Railroad v. St. Louis, 66 Mo. 256. Such powers were first granted by legislative authority. Fink v. City of St. Louis, 71 Mo. 52; State ex rel. Kansas City v. East Fifth St. Ry. Co., 140 Mo. 539; Kavanaugh v. St. Louis, 220 Mo. 496. The Legislature has made clear its meaning as to the powers, authority and scope of duty of the Public Service Commission. State ex inf. v. Gas Co., 254 Mo. 515; State ex rel. v. Pub. Serv. Comm., 270 Mo. 547.

*A. Z. Patterson*, General Counsel, *James D. Lindsay*, Assistant Counsel, for Public Service Commission.

(1) That the Legislature attempted to grant to the Public Service Commission power to release a street

56 SUPREME COURT OF MISSOURI.

Southwest Mo. R. R. Co. v. Pub. Serv. Comm.

railway company from a franchise obligation entered into upon a subject, essentially contractual in its nature, and of the very essence of the purpose for which the company was chartered, and the franchise granted, is most doubtful. Public Service Commission Act, sec. 2, subdivisions 5, 7 and 26; Sec. 16, subdivisions 2, 3, 8 and 9; Secs. 26, 27, 43, 47 and 49; State ex rel. United Railways v. Commission, 270 Mo. 442; Lusk v. Atkinson, 268 Mo. 109; State ex rel. v. Commission, 192 S. W. 460; Quimby v. Pub. Serv. Comm., 223 N. Y. 224. (2) The grant of the franchise by the city, in respect of use of its streets, and acceptance thereof by the company, constituted a contract which neither the city nor the company could annul without the "consent" of the other. Sec. 20, Art. 12, Constitution; Springfield Ry. Co. v. City of Springfield, 85 Mo. 674; Hovelman v. K. C. Horse Ry. Co., 79 Mo. 632; State v. East Fifth St. Ry. Co., 140 Mo. 539; St. Louis & M. R. Railroad Co. v. Kirkwood, 159 Mo. 239; Blair v. Chicago, 201 U. S. 400; Grand Trunk Ry. Co. v. South Bend, 227 U. S. 544, 44 L. R. A. (N. S.) 405. (3) The State may authorize a city and a street railway company to make an inviolable contract for a definite and not grossly unreasonable period, for the occupation and use of certain streets of the city by the company, in the service of the public. Milwaukee Electric Ry. & Light Co. v. R. R. Comm., 238 U. S. 175; Home Tel. & Tel. Co. v. Los Angeles, 211 U. S. 273; Detroit v. Detroit Ry. Co., 184 U. S. 382; Cleveland v. Cleveland City Ry. Co., 194 U. S. 533. Provided the authority be granted in express and unmistakable terms; and in this case the authority is constitutional, and unmistakable. Sec. 20, Art. 12, Constitution. And the unabridged police power of the State to prescribe reasonable rates, and regulations, legislative in nature, upon subjects within the scope of the legislative power reserved by the State (Sec. 5, Art. 12, Constitution; Sedalia v. Commission, 204 S. W. 497; Fulton v. Commission, 204 S. W. 386; St. Louis v. Commission, 207 S. W. 799; Kansas City v. Kansas City Rys. Co., 140 Mo. 559;) does

not destroy the contractual power of the city, exercised upon a contractual subject, in the manner and within the limits prescribed by said Section 20. (4) The State has set a limit upon its own power over the streets of its cities in the one respect of the occupation and use of those streets by a street railway company, in that the city must be contracted with, must give consent in its own constitutional right, as a condition precedent to such occupation and use. The city lets the use of a definite place, for a definite time, and for a definite purpose; the company enters upon the place, for the time, and to carry out the purpose—a service to the public for its own prospective gain. (5) Irrespective of all the foregoing considerations, the order of the Commission should be approved, because it could not properly grant an application which neither alleged inability to operate the spurs, nor a loss on all the operations of the company, nor such impairment of its finances as would impair its ability to render efficient service to the public, upon other or more important branches of its system. State ex rel. Mo. Pac. Ry. v. Atkinson, 269 Mo. 645; Iowa v. Old Colony Trust Co., 215 Fed., 307 L. R. A. 1915A. 549.

BOND, C. J.—The plaintiff is an incorporated interurban railway company connecting Carthage, Joplin, Webb City and other towns in Missouri, and extending into Kansas. The construction of this street railway in the City of Carthage was under and ordinance permitting the assignor of the company the user of a large number of local streets, and requiring in consideration thereof interurban connections by electric rapid transit, with certain other towns named in the ordinance. These interurban connections were duly constructed and are now fully maintained by plaintiff, which, also, as incidental thereto, ran spur tracks through the streets of Carthage connecting its interurban system with two railroad stations in that city. Over these spur tracks transfers were issued by the rapid transit lines. The plaintiff asked the Public Service Commission to discontinue these

spur tracks, which it alleges were not essential to the maintenance of its interurban lines and which were sparsely used, ran over a very short distance and could not be operated without a loss of $2500 a year or $50,000 in 20 years. The Commission took the view that it was without the power to grant the relief sought, however "meritorious the case presented by the company might be" and dismissed the complaint. Proper steps were taken to obtain a review of the findings and orders of the Commission, which were sustained by the Circuit Court of Cole County, from which judgment the rail-way company duly appealed.

I. Unless the issue in this case is distinguishable in principle from the one presented in City of St. Louis v. Public Service Commission, 207 S. W. 799, this appeal is dominated by that ruling and the judgment of the cir-cuit court will have to be reversed and the order of the Commission set aside. The learned counsel for the Commission concede the rectitude of that ruling and the cases sustaining it in this jurisdiction, but insist that said ruling related to the question of the power of the Commission to raise the rates of water, telephone and street railway companies "above those fixed by contract" with a municipality, and that they do not relate to cases like the present which involves the rights of a utility (in this instance a street railway) to discontinue the operation of any of its tracks constructed under a permissive ordinance, for the reason that it could be carried on only at a great loss.

*Discontinuance of Spur Track.*

The franchise of a street railway company is derivable solely from the Legislature. Its right to exercise that franchise over the streets and alleys of a particular municipality, is subject to the regulatory control of such city, which may evidence that control by an ordinance consenting to the use of its streets and alleys and designating those over which the street railway may operate its State-derived corporate powers. [Sec. 20, Art. 12, Con-

stitution 1875.] It was ruled that the City of St. Louis, in the exercise of such a regulatory control over its streets, could not make an inviolable contract with a street railway for a fixed rate of fare; that to do so would impinge upon the reserve power of the Legislature to exercise plenary control of any matter falling within the domain of the police power, as rate-making does. It was further held that Section 20 of Article 12 was not designed nor intended to abridge the full power of the Legislature over the class of subjects embraced within the inalienable police power of the State. [Const. Art. 12, sec. 5; Tranberger v. Railroad, 250 Mo. 46, affirmed 238 U. S. 67.] It was also held that Section 20 of Article 12 of the Constitution, to-wit: "No law shall be passed by the General Assembly granting the right to construct and operate a street railroad within any city, town, village, or on any public highway, without first acquiring the consent of the local authorities having control of the street or highway proposed to be occupied by such street railroad; and the franchises so granted shall not be transferred without similar assent first obtained," did not, in terms, nor by necessary intendment, devolve upon the municipalities therein mentioned any part of the unrestricted power of the Legislature to deal with all matters pertaining to the police power of the State where not constitutionally prohibited from so doing.

In the exercise of this great lawmaking function, the State is not obstructed by a contract between one of its agencies (cities, towns or villages) and other persons, for the reason that the State cannot alienate any of its sovereign powers which are *necessary* to the public welfare, or essential to the protection of the health, morals and property of its citizens. As an obvious corollary of this principle, no municipality, either by ordinance or contract, can impose upon a public utility essential to the welfare of the people, conditions of operation or maintenance which would confiscate its property or destroy its power to serve the public.

60        SUPREME COURT OF MISSOURI.

Southwest Mo. R. R. Co. v. Pub. Serv. Comm.

We are quite of opinion that there is no distinction in principle between the obligation (if, indeed, any was imposed by the mere permissive ordinance in question) on the part of the street railway company to maintain two spur tracks, not indispensable to the performance of its interurban duties, at a cost of operation which would preclude them from carrying on and maintaining its interurban system for the benefit of the people of the State served by that convenience, and the duty to exact a reasonable rate for service. Both relate to adequate performance of obligation to the public and are controllable by the Legislature or its authorized agency, the Public Service Commission. [Selectmen v. Cit. St. Ry., 199 Mass. 394.] It is well stated in a recent meritorious publication, viz: "It is settled that the general police power of the State embraces the regulation of the *service* and rates of public utility enterprises for the promotion of public convenience and the general welfare." [Harvard Law Review, Nov. 1918, p. 741.] (Italics ours). See, also, Munn v. Illinois, 94 U. S. 113, and a number of other decisions, including State ex rel. Sedalia v. Pub. Serv. Com., 204 S. W. 497. See, also, Union Drygoods Co. v. Ga. Pub. Serv. Com. U. S. Sup. Ct. Ad. Ops. Feb. 1, 1919, p. 116.

As we understand the finding of the Public Service Commission upon the facts adduced in support of the complaint filed before it, the evidence conclusively showed that the two local spur tracks connected with the general interurban system could only be maintained and operated at a disastrous loss. It seems conceded that the weight of evidence fully sustains this finding of the Public Service Commission, which body only refused relief upon the notion that it was constitutionally prohibited by the terms of Section 20, Article 12, of the Constitution, supra. It has been shown that that provision of the Constitution is not restrictive of the powers of the Commission in virtue of its agency as the representative of the Legislature.

It necessarily follows that the judgment of the circuit court sustaining the order of the Commission dismissing the complaint must be reversed and the cause remanded with directions to the circuit court to vacate that judgment and to enter a judgment setting aside the finding of the Commission and remand the cause to that body with directions to proceed in a manner not inconsistent with this opinion. It is so ordered.

PER CURIAM:—The foregoing opinion was prepared by our late associate, Bond, C. J., and was thereafter transferred to Court in Banc. After reargument and due consideration the opinion is adopted and the judgment of the circuit court is reversed and the cause remanded with the directions set out in the opinion. *Blair, J.,* concurs in a separate opinion, in which *Woodson, Goode* and *Williamson, JJ.,* concur; *Graves, J.,* dissents, in a separate opinion, in which *Walker, C. J.,* concurs; *Williams, J.,* not sitting.

BLAIR, J. (concurring)—The Public Service Commission decided it was without jurisdiction to entertain a proceeding of this kind, whatever merit might seem to inhere in the facts of a particular case. Whether this view is right or wrong is the sole question presented by this record. Since it has been suggested that the proceeding did not ride off before the Commission on the question of jurisdiction, an examination of its opinion is pertinent. In that opinion the conceded and conclusively established facts were stated as such, and the tendency of the evidence was stated as to the rest. After stating these things and observing that after an application to the city for leave to remove the tracks in question here, appellant "instituted this proceeding before the Commission," that tribunal stated the question before it thus: *"The city has challenged the jurisdiction of the Commission to grant the relief prayed for and we have concluded this contention is well founded."* The Commission then proceeds to give its reasons for this

62    SUPREME COURT OF MISSOURI.

Southwest Mo. R. R. Co. v. Pub. Serv. Comm.

conclusion. It holds (1) that "we have failed to find any authority in the Public Service Commission Law specifically conferring upon the Commission *power* to relieve a street railway company from the performance of franchise provisions granted by the city and accepted by the company, nor do we find such *power* necessary to enable the Commission to carry out the purpose of the law," and (2) that "we reach the same conclusion if we consider the authority of the city as to matters properly included within the franchise granted by it to the street railway company. Section 20 of Article 12, of the Constitution of this State provides," etc. After discussing, in this connection, Section 20 of Article 12 of the Constitution, the Commission, in its opinion, says: "Our conclusion is, that *however meritorious the case* presented by the company *may be on its facts,* this Commission is not clothed with *power* to grant the relief sought." After discussing a cross-complaint of the city and holding it cannot be considered, the opinion concludes: "It follows from the views expressed that the complaint should be dismissed."

It is too obvious for discussion that this opinion of the Commission holds exactly what it says in express words, i. e. that the contention of the city that the Commission has no jurisdiction "is well founded." In State ex rel. v. Public Service Commission, 259 Mo. l. c. 710, the Commission had held it was "without authority to grant the relief prayed for 'regardless of any evidence that may be submitted' and 'regardless of the fact that complainant may show such rates, fares and charges to be unjust, unreasonable and confiscatory of its property.' " This court held the Commission had *power* and ordered it to proceed with the matter and dispose of it "as the facts warrant." In this case the Commission has made an express finding it has no jurisdiction, refused for that reason to consider the evidence in reaching its decision, and, I repeat, the sole question is whether this finding of no jurisdiction is correct under the law.

I.   In State ex rel. Public Service Commission v.
Missouri Southern Railway, 279 Mo. 460 and 489, 214 S.
W. 381, it was held that a railroad company could not
abandon tracks, operated in connection with its main
line, without first securing permission from the Public
Service Commission so to do. Identical provisions of
the Public Service Commission Act of 1913
<span>Abandoning Tracks.</span> disclose the intent of the Legislature to apply
the same principle to street railways.   If
these statutory provisions are valid and applicable to
relator, then the Commission has reached an incorrect
conclusion as to its jurisdiction.

II.   The only constitutional provision which is put
forward as justifying the holding of the Commission is
Section 20 of Article 12 of the Constitution of the State,
which is set out in the opinion prepared by Judge Bond
in Division and transferred to Court in Banc with the
case.   This section expressly, so far as concerns the
questions in this case, provides that the General Assem-
bly shall not pass any law ''granting the right to con-
struct and operate a street railroad within any city
. . .   without first acquiring the consent'' of such city.
It is argued this section justifies the action of the Com-
mission in this proceeding.   There are two reasons why
this position is not tenable here.

There is no contention possible that Section 20 of
Article 12 expressly provides that a street railway,
properly admitted into a city, cannot be permitted by
the State to take up an unprofitable portion of its tracks.
All that could be claimed is that the city can impose
such conditions as the price of its consent or that such
condition is necessarily implied.

(a)   The question whether the franchise ordinance
contains express provisions denying the company the
right to take up a part of its tracks when the consent of
the State is procured, and the question whether that
ordinance in itself by its terms and conditions permits

the company to remove unprofitable parts of its tracks, cannot be reached in this case. These are *Matters for Review.* questions of fact and for determination, in the first place, by the Public Service Commission. This appeal is from an order refusing to proceed to the consideration of the case, on the ground that the Commission has no power to do so. Whether there is a valid franchise contract between relator and the city which enables the latter effectually to resist the order sought, or, in the absence of such a franchise contract, whether the facts justify such an order are matters for investigation *after jurisdiction has been assumed.* The power of this court is simply one of review, and we are not authorized to review the facts, and make a finding of our own thereon until after the Commission has exerted its power over the facts and made its finding, one way or another. This is true regardless of the manner in which the law allows this Court to review the evidence on appeal in a case like this. For this reason, alone, the judgment should be reversed and the cause remanded to the Commission for the performance of its proper function.

(b) So far as concerns the question of implying a condition from the grant of the right to enter, it is manifest none can be implied in contradiction of the terms of the franchise ordinance. Whether such an implication in this case would contravene that ordinance *Implication.* is a question reached only after the Commission assumes jurisdiction and reaches the facts. This it has not done. For this reason this theory of implication does not answer what is said under (a) supra.

III. Even if it be assumed that what is said in Paragraph II, supra, is not sufficient to preclude, in the circumstances of this appeal, the further consideration of the case, and that we can assume the franchise ordinance does not expressly or impliedly permit *Permission to Remove Tracks.* the company to remove tracks under circumstances the evidence is said to tend

Vol. 281]　　OCTOBER TERM, 1919.　　65

Southwest Mo. R. R. Co. v. Pub. Serv. Comm.

to show in this case, the holding of the Commission that it had no jurisdiction is nevertheless erroneous.

(a)  It does not appear that the city has actually imposed any condition relating to the right of the street car company to take up track under circumstances which, in the absence of such conditions, would render it lawful.

(b)  It has been suggested that since the city consented to the use of certain streets then, if abandonment of a part is permitted, it cannot be said the city ever consented to the entry.  This view seems based upon the idea that since the city did not originally consent to the use, solely, of such streets as would be occupied after a part abandonment, the consent of the city completely disappears simultaneously with the taking up of part of the track. The query is, "When did the city ever consent to the use, by themselves, of the parts of the street still occupied after a part abandonment is permitted?" The question this argument is used to answer is whether in giving its consent, the city gives it subject to all the applicable law and in anticipation of the application of that law to its consent, and whether the law applicable permits the State to authorize the abandonment of a part of the whole line to which the consent applied.  In such a situation to argue that the consent never was given if part, in a proper case, is permitted to be removed, is to assume that to be true which it is the purpose of the argument to prove.  The argument proceeds in a circle. When the question is whether consent was given subject to existing law and whether that law is a certain thing, it is no answer to say that "consent was not given subject to such law because, if the existing law applied to the consent then consent was never given."  The argument cannot be advanced by this mode of reasoning.

*Neutralizing Consent.*

(c)  Like observations apply with equal force to certain arguments based upon the declaration that the constitutional provision is designed to confer upon the city "supreme power" over its streets, and it would

5—281 Mo.

66        SUPREME COURT OF MISSOURI.

Southwest Mo. R. R. Co. v. Pub. Serv. Comm.

be ánomalous to hold that the constitutional provision "while conferring absolute power upon a city to grant the use of its streets in the first instance, it would nevertheless permit a railway company, when the use had been granted, to abandon it at its will, regardless not only of the rights of the city but of the public." This is subject, also, to the further criticism that no effort is being made to justify any view that the company could "abandon the use" of city streets "at its will" in any case. In fact, it has been held it can do nothing of the kind. This proceeding shows it is attempting nothing of the kind. In no event could it abandon a street except upon a showing that convinced the Commission or this court that the public would not be injured. The existence of this proceeding necessarily implies that much. Recurring to the first observation concerning this last mentioned argument, it is clear that in considering the question whether the city possesses a certain right or power, it is not sound argument to assume "the city's power is 'supreme,' is 'absolute,' and, therefore, it has the power we are inquiring about."

(d) It is said further that "the power to grant the right to use the streets in the first instance carries with it the consequent power to regulate that use when granted. This is true not only on general principles, but is emphatically so here because of the contractual relation created between the city and the street railway company by the grant of the use of the streets, and also on account of the public service character of the company." The question of the *regulation* of the use of the streets during occupancy is not in this case. The contractual relation cannot be assumed in argument to be this or that since the inquiry here is what that contractual relation is and includes. The public service character of the relator is the thing which subjects it to regulation, but that character does not answer the question whether the regulatory power extends to a particular thing in this particular case.

(e) Another argument advanced is based upon the view that since the franchise ordinance gave the relator the right to operate for forty-nine years, therefore the franchise ordinance became a *contract* to operate for forty-nine years the whole line, without change. This is necessarily predicated upon the idea that the Commission took jurisdiction of the case and that it based its finding upon the evidence.

Contract to Operate.

The fallacy of this has been pointed out. The Commission held that the question presented was whether it had jurisdiction. It then held it had jurisdiction, could have none under any conceivable state of evidence, refused to consider the facts and dismissed the complaint because it had no jurisdiction. Further, the franchise ordinance did not constitute a contract to operate forty-nine years. This feature of the franchise was not contractual or obligatory. It was permissive. Though it be assumed the city might have imposed an obligation to operate for a fixed period, it cannot be claimed this ordinance pretends to do so by its terms. The effort made in the argument now under consideration is to imply such an obligation from a grant of a right. If this implication arises in this case it arises in every case. It does not depend upon the constitutional provision referred to. It is argued it is a condition *protected* by that constitutional provision. It is not one *arising out of it*. It amounts, therefore, to a declaration that, as a matter of law, whenever a street car company (railroad and other public service corporation, as well) enters upon the enjoyment of franchise rights, or part of franchise rights granted it, it is obligated to operate the whole during the full period for which the right to operate is granted. This is raising an implication not at all necessary on the facts and clearly in restriction of the police power of the State. During the time the company operated it would be subject to all valid ordinance regulations whether in the franchise or subsequently enacted. The argument implies from the franchise ordinance and a building of the

68        SUPREME COURT OF MISSOURI.

Southwest Mo. R. R. Co. v. Pub. Serv. Comm.

car lines over a *part* of the streets designated therein, a contract, to operate the lines built, during the whole time over which the right might extend, affixes this implied contract, as a condition, to the consent to enter the city, and holds that this is protected from interference by the State in the exercise of the police power. In the first place, as pointed out, it is not pertinent to the question of jurisdiction; second, it assumes a permissive grant to be a contract; third, it holds that a condition *implied* from an arrangement between a public service corporation and a municipality by its own force frees itself from the exercise by the State of the police power, regardless of its effect in burdening the public with the necessity of paying, on going lines, the expenses of the operation of useless appendages to a street car system. In this case the burden would fall upon those using relator's interurban lines. The principle sought to be established by this argument must be as broad as we have stated it or it is of no force at all to prevent the intervention of the State through the Commission.

IV. It has been consistently held that in giving its consent to the use of its streets by a street railway a city lawfully may impose conditions. The cases are collected in City of St. Louis v. Pub. Serv. Comm., 207 S. W. 799. The authority of the city to condition its assent is not expressly conferred by Section 20 of Article 12. The power is implied from the right entirely to withhold such assent. Section 20 introduced no new principle and created no new right. It merely made secure from legislative interference the right of the municipality to deny entrance to a street railway, a right theretofore quite generally existing and exercised under statutory or charter provisions. Nothing was added to the power itself by making the Constitution rather than the statutes the repository of the power. The right of the city to impose conditions is still an implied right. This right or power is not unlimited. At least as between the municipality and the public as represented by the General Assembly, the

*Conditions.*

conditions affixed to the consent must be within the scope of municipal authority. Section 20 of Article 12 does not confer upon the city authority, by means of conditions imposed, to draw under its dominion subject-matter not otherwise within its jurisdiction. Neither can such conditions be employed to require the performance of a forbidden act nor to limit the taxing power of the Legislature. The question of estoppel in favor of the city, referred to in cases in this State, does not arise in a case in which the public, represented by the Commission, is a substantial party. It is also settled that a city by means of conditions engrafted upon consent cannot limit, control or interfere with the police power or its exertion in the regulation of street railways. [3 Dillon on Mun. Corp. sec. 1229; St. Louis v. Pub. Serv. Com., supra.] These limitations upon the city's power to condition its consent existed before the adoption of the Constitution. They arise irresistibly out of the nature of municipalities and their relations to the State. They were carried into Section 20 of Article 12 as certainly as was the power to impose conditions at all.

Formerly the Legislature had full power over city streets and rights of street railways thereon. It is still the source of the *powers* of a street railway organized in this State. The charter is from the State. Such charter does not relieve the corporation from obedience to regulatory statutes valid as exertions of the police power. Neither, as stated, can the city in the exercise of its power to condition its consent, whether by franchise contract or otherwise, curtail the police power vested in the Legislature. [State v. Railroad, 242 Mo. l. c. 375; City of Fulton v. Pub. Serv. Com., 275 Mo. 67; City of St. Louis v. Pub. Serv. Com., 207 S. W. l. c. 805.]

The power of the city to refuse admission to a street railway is beyond legislative control. Doubtless there are conditions which may be affixed pursuant to the city's implied power under Section 20 which are equally exempt therefrom. A city in a particular case might im-

70     SUPREME COURT OF MISSOURI.

Southwest Mo. R. R. Co. v. Pub. Serv. Comm.

pose conditions which are invalid, and it may be the city would not have given its assent to the entry of the company except for these conditions. Whether such conditions are merely void or whether their invalidity is ground for avoiding the whole franchise are not questions determinable on this record.

I concur in the opinion of Judge BOND except as herein otherwise indicated. *Woodson, Williamson* and *Goode, JJ.,* concur.

GRAVES, J: (dissenting).—I have not changed my views in this case. The Constitution requires the assent of the city, before a street railway company may construct its lines over the streets of the city. The city can say the assent is given, but upon the condition that the street railway company shall operate its lines for a certain and definite number of years. In this case it was 49 years. This is a valid condition, and it requires the assent of the city to undo what has been done. This condition does not strike at the police powers of the State. If the company is losing money, it can increase its charge through the Public Service Commission. The sole case made before the Commission was the loss of money in the operation of the road. The case was heard, evidence taken, and opinion written in which the facts are stated. Under the Constitution the Commission had no power to uproot the franchise contract as to the term the railroad should perform its public service. This term of the contract does not contravene the police powers, and is valid. The rate clauses of these franchises are invalid, because they do contravene the police power. The actual ruling of the Commission may be awkwardly expressed, but the fact remains that they said to the railway company, in effect, if all you say is true, and all your evidence is true, we can't relieve you, because under Section 20 of Article 12, you had to get the assent of the city, and you say that you did get such assent upon condition that the cars were to be run for a definite time, and this condition we can not change, because it was a proper one

Southwest Mo. R. R. Co. v. Pub. Serv. Comm.

under the constitutional provision. In other words, you ask relief which we can't grant under your own evidence and statement of the case. You asked for the constitutional assent of the city, and you say that you got such assent coupled with a lawful condition, which condition you accepted, tore up the streets and built the road. Now when you discover that your road does not pay, you ask us to strike from the contract a lawful condition under Section 20 of Article 12 of the Constitution, and this the Commission has no power to do. This is the substance of the ruling by the Commission, and we think it correct.

The case was in fact tried, and an opinion detailing the facts found was written. The opinion used the word jurisdiction, where it really meant that the Commission has no power, by reason of rights given the city under Section 20 of Article 12, to change or ignore the terms of a written contract. We have held that the Commission can ignore the rate terms of the franchise contract, because such terms entrenched upon the police powers of the State. But we have never gone so far as to say that the Commission can ignore other provisions of the franchise contract, which do not contravene the police powers. In the instant case the Public Service Commission in the opinion simply says we can't ignore this valid condition of this franchise contract. This is the sum and substance of its ruling, and nothing more. The Commission as shown by the opinion exercised its power, but refused relief on the theory that it had no power (jurisdiction) to set aside the franchise contract. The judgment should be affirmed. *Walker, C. J.,* concurs in these views.